KOLLOCK, Appellant, vs. SCRIBNER, imp., Respondent.
KOLLOCK vs. SCRIBNER, Appellant, and KAISER, Respondent.

*November 22 — December 10, 1897.*

*Landlord and tenant: Covenant to renew: Execution of new lease: Pleading: Affirmative relief against co-defendant: Effect of dismissal of complaint.*

1. A general covenant in a lease to extend or renew implies an additional term equal to the first, and upon the same terms, including that of rent, except the covenant to renew.

2. A general covenant to extend or renew a lease does not imply a continuation or renewal of the special covenant, because that would have the effect, by construction, to make the lease perpetual, or to call for renewals in perpetuity. Such interests in land are not favored in the law, and are not, therefore, upheld by construction or deduction from general language.

3. The question of whether a covenant to extend a lease implies the making of a new lease, was settled in this state in *Orton v. Noonan*, 27 Wis. 272, in the affirmative, and *a fortiori* a covenant to renew must have the same effect.

4. The only pleadings in actions under the Code are those prescribed thereby. It constitutes a complete system which preserves all the remedies, both at law and in equity, of the old system and, with the rules of court, prescribes the methods of procedure and

system of pleading by which the jurisdiction of the court is exercised and the remedies pursued.

5. The system of pleading, consisting of complaint, demurrer, answer, and reply, meets the necessities of all parties, in all cases, and in all courts. The answer setting up new matter constituting a counterclaim, where a defendant seeks affirmative relief against a plaintiff, and the answer setting up facts entitling a defendant to such relief against his co-defendant as the court has jurisdiction to grant under sec. 2883, R. S., take the place of the cross bill of the old practice. The answer of a defendant, seeking relief of his co-defendant, is in the nature of a cross bill, but is an answer and a code pleading nevertheless. .

6. A defendant seeking relief of a co-defendant must set up the facts entitling him thereto by answer, and therein claim such relief, and it is proper for the court to require him to serve such answer on the defendant affected thereby and to require the latter to plead to such answer by way of demurrer or reply.

7. Where there is an answer by a defendant, setting up new matter entitling him to relief against a co-defendant, and claiming such relief, and the facts constituting the cause of action in that regard, independent of the principal action, would not entitle such defendant to any relief in equity, if the complaint fails for want of equity, or is dismissed, that carries with it the incidental issues between the co-defendants.

[Syllabus by MARSHALL, J.]

APPEALS from orders of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed on plaintiff's appeal; affirmed on that of the defendant Scribner.*

On the 1st day of April, 1886, Wiley S. Scribner leased to the plaintiff the premises described in the complaint, for the term of ten years from that day, "with the privilege of a renewal." Since that time, up to the commencement of this action, plaintiff occupied the premises under said lease, and performed all the conditions thereof on his part to be performed., Subsequent to the making of the lease the lessor died and defendant *Mary L. Scribner* became the owner of the property by descent, under the laws of this state. Thereafter she sold the property and conveyed the same to defendant *Kaiser* by deed with full covenants, taking back a

mortgage to secure the payment of $12,000 of the purchase money. She held the mortgage and the debt which it secured at the time of the commencement of this action. Plaintiff duly demanded a renewal of his lease for an additional term of ten years by the making of a new lease containing all the provisions of the old one, except the covenant for renewal. The demand was refused. This action was brought against the defendant *Scribner* and her vendee, *Kaiser*, on a complaint setting forth all the aforesaid facts. Two causes of action were set forth in the complaint, one for specific performance and the other to quiet title. Defendant *Scribner* demurred to the complaint: First, for want of jurisdiction of the court of the subject of the action and over the person of the defendant; second, for improper joinder of two causes of action; third, for failure to state facts sufficient to constitute a cause of action. The demurrer was sustained upon the ground that it appeared from the facts set forth in the complaint that plaintiff was entitled to hold the leased premises for an additional term by extension of the old lease under the agreement for renewal, and was not entitled to a new lease. Defendant *Kaiser* answered, setting up facts entitling him to relief against his grantor on the covenant in his deed by an abatement of the amount of purchase money secured by the mortgage, to the extent of the damages that would result to him from the plaintiff's claim for a renewal of the lease, if such claim prevailed against defendant *Scribner*. Defendant *Scribner* moved the court to strike out that part of the answer constituting, or attempting to set up, a cause of action against her. The motion was denied and the court ruled that the answer stand as a cross complaint by defendant *Kaiser* against his co-defendant. Thereafter such co-defendant demurred to the so-called cross complaint: First, for want of jurisdiction of the person of defendant and the subject of the action; second, because several causes of action were improperly joined;

third, for failure to state facts sufficient to constitute a cause of action; fourth, for insufficiency as a counterclaim or cross complaint. The demurrer was overruled, and exception to the ruling was duly taken.

Plaintiff appealed from the order sustaining the demurrer of defendant *Scribner*, and she appealed from the order overruling her demurrer to the so-called cross complaint of defendant *Kaiser*.

For the plaintiff there were briefs by *Bushnell & Rogers*, and oral argument by *A. R. Bushnell*.

For the defendant *Scribner* there were briefs by *Bashford, Aylward & Spensley*, and oral argument by *R. M. Bashford*.

For the defendant *Kaiser* the cause was submitted on the brief of *Hall & Sheldon*.

MARSHALL, J. Upon the appeal of the plaintiff we are first called upon to determine whether the agreement to renew the lease was void for uncertainty. On that subject *Laird v. Boyle*, 2 Wis. 431, is cited by defendant *Scribner*, where the court said, in substance, that a general agreement for a renewal, no time or terms being stated, is void for uncertainty. That appears to be a clear adjudication of the question before us. It will not do to ignore it by saying it is mere *obiter*. True, there was another ground upon which the case was decided, which was plain and decisive, but the decision was placed on both grounds, so one was judicially determined as well as the other. But the doctrine there announced, upon which the defendant relies, we may safely venture to say is not supported by any subsequent adjudication of this court or by reputable authority elsewhere. It evidently did not receive careful consideration at the time, as a careful reading of the authorities cited by the learned judge who wrote the opinion fails to disclose any good reason for basing the decision thereon. None of them really appear to touch the question.

Kollock vs. Scribner and another.

Generally, every contract relating to real estate must be definite in its terms in order to bind the parties so that a court of equity will enforce it by judgment for specific performance.   But where the parties thereto have made their contract in writing and it will reasonably admit of two constructions, the court will prefer that which will uphold it rather than the one which will defeat it.   Under this familiar rule, leases containing a general promise to renew have been uniformly held to refer to the terms of the lease in which such language is used, so as to be, in effect, an agreement to renew upon the precise terms and conditions therein stated, except as to the condition to renew.   That has been uniformly excepted because of the effect, otherwise, to make a perpetual lease.   Such result is not favored in the law, so it cannot be accomplished by mere construction, but only by express and unmistakable language.   One of the leading cases on this subject, cited by all text writers, is that of *Rutgers v. Hunter*, 6 Johns. Ch. 215, where the court held that a covenant to renew for another term carried with it, by implication, an agreement to renew on the same terms and conditions, as to all the essential conditions of the lease.   The chancellor said, in substance, that the covenant was not void for uncertainty because of the failure to specify the terms; that the words used implied the same terms as those contained in the first lease, except the provision which would tend to create an agreement for a perpetual lease; that such an extraordinary covenant as that must be supported by language clear and certain, and not be deduced by construction from the mere general agreement to " renew the lease."   To the same effect are *Cunningham v. Pattee*, 99 Mass. 248; *Ranlet v. Cook*, 44 N. H. 512; *McAdoo v. Callum Bros. & Co.* 86 N. C. 419; *Tracy v. Albany Exchange Co.* 7 N. Y. 472; *Western Transp. Co. v. Lansing*, 49 N. Y. 499; *Hughes v. Windpfennig*, 10 Ind. App. 122.   In Gear's Landlord & Tenant (§ 102) the rule is laid down thus: " A stipulation for re-

newal merely will be enforced, as meaning a renewal upon the same terms, with the exception of incidental covenants, including the renewal covenant." In Wood, Landlord & Tenant, 935, on the same subject, it is said: "An unqualified covenant to renew a lease involves the making of a new lease, . . . and for the same period as the original lease. . . . It is well settled, however, that this does not include a new covenant to renew, or any covenant of the former lease that has been fulfilled and is not continuous." And in McAdam, Landlord & Tenant, 255: "A covenant to renew implies the same term and rent, and perhaps the same conditions, excepting that a covenant to renew a lease under the same conditions contained in the original lease is satisfied by the renewal of the lease, omitting the covenant to renew," citing *Carr v. Ellison*, 20 Wend. 178. Many more authorities might be cited to the same effect, but suffice it to say that all are in substantial accord.

The statement in the early case in this state has evidently been considered out of harmony with authorities generally on the subject, as we do not find it referred to by text writers or courts. Many adjudications may be found to the effect that covenants to renew must specify the terms and conditions of the renewal or fail for want of certainty, but that requisite is met and satisfied by the construction of the general promise to renew in connection with the lease to which it refers. When the agreement for a renewal contains language other than that appropriate to a general promise, so that by resort to the settled rules for construction the language of the covenant to renew and conditions of the renewal cannot be made certain, then such covenant fails for want of certainty. Examples of such cases are given in *Tracy v. Albany Exchange Co.* 7 N. Y. 472, such as a contract to renew upon such terms as may be agreed upon, citing *Whitlock v. Duffield*, Hoff. Ch. 110; 4 Kent, Comm. 108; *Abeel v. Radcliff*, 13 Johns. 297. The same cases are

cited to illustrate the same proposition in McAdam, Landlord & T. 255.

It follows from the foregoing that the order appealed from cannot be sustained upon the ground that the general promise for renewal was too indefinite to be enforced, and it remains to be seen whether the trial court was right in sustaining the demurrer to the plaintiff's complaint upon the theory that a promise to renew is equivalent to a promise to extend, and that a promise to extend does not require or contemplate the making of a new lease.

It is not deemed necessary to discuss, as an original proposition, the question of whether the general promise to renew a lease calls for a new one, or whether, at the option of the lessee, it is extended by the force of the covenant itself and becomes, in effect, a lease for the additional term. The latter construction was given in *Ranlet v. Cook*, 44 N. H. 512, and it has been cited with approval by many courts and text writers. On the contrary, there is much respectable authority to the effect that the words "renew" and "extend" should be construed in accordance with their ordinary meaning. Obviously, one means to prolong, or to lengthen out; the other, to make over, to re-establish, or to rebuild; and those courts and writers that have construed them accordingly certainly have the best of the argument, if the judicial construction is to follow the true definitions of the words. We apprehend that no one would seriously contend that an agreement to renew a note would be satisfied otherwise than by making a new note in place of the old one. It would seem that the construction adhered to in some jurisdictions, that to renew is equivalent to extend, violates the rules of language to reach a judicial construction out of harmony with the universally accepted meaning of the words as defined by lexicographers. That was discussed in *Orton v. Noonan*, 27 Wis. 272, where the renewal covenant used the words "extend the lease." A careful reading of the

two opinions filed in that case, one by Dixon, C. J., and one
by Mr. Justice Cole, leaves no room for controversy but
that, while they differed as to the meaning of the term " to
extend," as applied to the lease then under consideration,
they both held that an agreement to renew a lease called
for a new one.  Said the chief justice: " The verb 'to ex-
tend' implies far less than the verb 'to renew.'  The one
means to draw forth, to stretch, to prolong, to protract, to
continue; the other to make over, to make anew, to give new
life to, to restore, recreate, or rebuild."  It was by that process
of reasoning that he supported his dissent from the opinion
of the court delivered by Mr. Justice Cole, holding that the
agreement to extend for an additional term contemplated
the making of a new lease.   Though the decision was ren-
dered *ex necessitate*, there being but two members of the
court who participated in it, both were in accord on the
question now before us.   In any view of the case the decis-
ion settled the law on the subject for this court, contrary to
the decision of the trial court challenged on this appeal, and
no reason is perceived why, after the lapse of a quarter of a
century, the controversy should be considered open for dis-
cussion, especially on the question of whether an " agreement
to renew " and " agreement to extend " are equivalent terms.
If they are, then the question of whether a general agree-
ment to renew contemplates a new lease, is foreclosed, be-
cause it was there held that an agreement to extend has
that effect.   And if they are not equivalent terms, then the
distinction between them is in favor of the contention that
a new lease is required to satisfy an agreement to renew.
The decision, though *ex necessitate*, especially after the lapse
of so much time, must be considered just as binding as a
rule of law on this court and all courts of this state, and
between all parties, where the same question arises, as if it
were rendered by the unanimous or a majority voice of this
court.  *Stare decisis, et non quieta movere.*

What has preceded leaves no further question for consideration on plaintiff's appeal, and it must result in a reversal of the order sustaining the demurrer to the complaint.

On the appeal of defendant *Mary L. Scribner* from the order overruling her demurrer to the answer of defendant *Kaiser*, which answer is termed a cross bill, the chief contention is that the demurrer reached back to the first pleading, i. e. the complaint of the plaintiff, and should have been sustained upon the same ground as that upon which the demurrer of defendant *Kaiser* to such complaint was sustained; that the complaint failing, the cross bill, so called, was carried down with it. We having held that the demurrer to the complaint was improperly sustained, the point upon which, as stated, defendant *Scribner* chiefly relies is no longer necessarily in the case for a decision. But as the question of practice is here, is important, and may have some future bearing on the disposition of the case, we have determined to decide it on account of such probable future bearing on this litigation, and as a guide in future cases as well.

The framers of the Code clearly intended to abolish all distinctions between actions at law and suits in equity, to abolish the forms of all such actions, and to provide that, in this state, there shall be but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs, which is denominated a civil action. R. S. sec. 2600. So it is not left for the courts to invent new forms of action in that regard, or use old forms except as preserved in some way by the Code. Generally, all persons having an interest in the subject of an action, and in obtaining the relief demanded, may be joined as plaintiffs. R. S. sec. 2602. And any person may be made a defendant who has, or claims to have, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. R. S. sec. 2603. Also, any per-

son whose presence is necessary to a complete determination of the controversy, and any person having such an interest in the subject matter of the controversy as requires his presence for his due protection, may be made a party. R. S. sec. 2610. So the Code is quite as broad as the old practice, so far as relates to parties plaintiff and defendant. Now as to pleading, it provides that the forms of pleading for civil actions, and the rules by which the sufficiency of the same are determined, are those prescribed by the statute (R. S. sec. 2644); that the first pleading on the part of the plaintiff shall be the complaint (R. S. sec. 2645); that the first pleading on the part of the defendant shall be a demurrer or answer, and that the answer may contain a general or specific denial of each material allegation of the complaint, controverted by the defendant, or a statement of new matter constituting a defense or counterclaim to the cause of action set forth in the complaint. R. S. sec. 2655. To the answer the plaintiff may demur to the defensive part, and may reply or demur to the counterclaim. That seems to compose the whole scheme for forming issues and presenting questions for determination in all actions, whether heretofore denominated legal or equitable, so far as expressly provided for. It is said that the counterclaim of the Code was intended to preserve to a defendant all remedies he formerly had, either in an action at law or by a bill in equity or a cross bill on similar facts. 2 Wait, Pr. 476, and cases cited. Said Bosworth, J., in *Gleason v. Moen*, 2 Duer, 639: "The counterclaim secures to the defendant full relief, which a separate action at law, or a bill in chancery, or a cross bill, could have secured to him on an allegation or proof of the same facts, but it relates to only such causes of action as exist against the plaintiff, and might, in their nature, be the basis of an action against him at the suit of the defendant."

Van Santvoord, in his work on Pleading (page 574), after

discussing generally the purposes of the cross bill under the old practice, says: " All these various matters which, under the equity practice, were proper subjects for a cross bill, where the object was for relief and not discovery, are supposed to be within the term 'counterclaim,' as used in the Code, and may be set up by the defendant in the action. . . . A cross bill was sometimes necessary in adjusting equities between the defendants, as where the court could not make a complete decree without bringing other matter before the court to be litigated by the proper parties and upon the proper proofs. In such cases it became necessary for one or more of the defendants to file a cross bill. . . . *This, in a proper case, under the Code, it seems, may also be done by an answer.*" The same writer, in his work on Equity Pleading, touching the same subject, uses language indicating that in his opinion the cross bill of the old practice is retained under the Code for some purposes. The cases he cites, however, all treat the pleading as the answer of the Code, as, for example, *Bogardus v. Parker*, 7 How. Pr. 305, where the pleading was an answer claiming affirmative relief on appropriate allegations of facts, and the court said, in effect, that on such a pleading, under the statute, the court could determine ultimate rights between co-defendants and enter the appropriate judgment. The author cites the same cases in his work on Pleading, to support the text there that the relief formerly obtainable by cross bill is obtainable under the Code by answer setting up the facts and claiming such relief. That is in accord with Baylies on Pleading under the New York Code (page 277), citing provisions of such Code, hereafter mentioned. Wait, on the same subject (vol. 2, p. 476), says: " While there are cases in New York that intimate that cross bills in some cases are necessary, nowhere is it expressly decided that a resort to cross pleading under the Code is allowable or proper, or that there can be any case of a failure of justice resulting from an inability to interpose them."

The apparent uncertainty in the practice, to which refer-
ence was made in the last quotation, was subsequently rem-
edied by a statute which did not provide for any additional
pleadings, but regulated the practice so as to make the Code
pleadings more certainly fit the necessities of all cases.    In
*New York S. & T. Co. v. Saratoga G. & E. L. Co.* 88 Hun,
569, HERRICK, J., speaking on the same subject, said, in effect,
that the cross action, with the forms of procedure relative
thereto, no longer exists; that the forms of pleading in all ac-
tions are prescribed by the Code, and that alone.

Without further reference to authorities, we think there
can be no escaping the conclusion that cross bills, strictly so
called, were done away with by the Code.    Nevertheless, all
the remedies of the old practice are preserved and intended
to be worked out through the forms of pleading which the
Code prescribes.    As we have shown, any person interested
in the controversy adversely to the plaintiff, or necessary to a
complete determination or settlement of the questions in-
volved therein, or so interested in the subject matter of the
controversy as to require his presence for his due protection,
is a necessary or a proper party defendant, hence entitled to
plead and to set forth by the pleading the facts warranting
the relief which the court has jurisdiction to grant.    The
scope of the pleading must necessarily be broad enough to
present all the questions which the court may properly de-
cide in the action and settle by its decree, including any con-
troversy between parties defendant which the court can
determine without prejudice to the rights of others or by
saving their rights.    R. S. sec. 2610.    "Judgment may be
given for or against one or more of several defendants, and
it may determine the ultimate rights of the parties on each
side, as between themselves, and may grant to the defendant
any affirmative relief to which he may be entitled," etc.
R. S. sec. 2883.    So the relief that may be obtained in the
action is quite as broad as under the old practice.

It follows, necessarily, that a defendant who seeks affirmative relief against a co-defendant cannot obtain it under a counterclaim strictly so called, because that is a proper pleading only as against the plaintiff. So it is clear that the Code is deficient in respect to providing for the necessary pleadings upon which to adjudicate the questions that may be settled by the decree, unless the answer of the defendant who seeks affirmative relief against his co-defendant in respect to a matter germane to the subject of the action may be in the nature of a cross bill under the old practice, but a substitute therefor, and the answer of the Code, nevertheless. That would seem to be the intent of the framers of the Code, and such was the holding in New York before the passage of the law (§ 760, Stover's N. Y. Code) providing for cross actions, and § 521, which provides that where the judgment may determine ultimate rights as between defendants, one who requires such determination must demand it in his answer, and must, at least twenty days before the trial, serve a copy of his answer upon the attorney for each of the defendants affected thereby. It is said in the note by the compilers of the Code, that this provision was enacted to supply an omission to regulate procedure under § 1204, which is identical with sec. 2883 of our statutes, relating to the power of the court to settle ultimate rights between co-defendants, and render the proper administration of the law under it certain. The note states that without some provision regulating the practice, the administration of the remedies under the section to which it refers was difficult. That came from the fact that a person seeking relief against a co-defendant was entitled, by answer, to set forth all the facts requisite to entitle him to such relief, and was not required by statute to serve his answer upon the defendant affected thereby, and the courts were in conflict as to whether service was required independent of the statute. *Bogardus v. Parker*, 7 How. Pr. 305; *Tracy v. N. Y.*

*S. F. Mfg. Co.* 1 E. D. Smith, 349. The reason given by the courts of some states having a code practice, for holding the cross bill of the old practice not done away with by such Code, can hardly apply here any more than in New York, from whence our Code was taken. Its framers intended to devise a perfect system that would vest in one court power to administer all the remedies, both at law and in equity, which formerly existed, to be worked out in one form of action and with one system of pleading. As said by Mr. Justice HERRICK, in *New York S. & T. Co.* v. *Saratoga G. & E. L. Co.* 88 Hun, 569: "While all remedies, both in law and equity, have been undoubtedly preserved, the method of procedure by which the jurisdiction shall be exercised and the remedies pursued have been entirely changed, and will now be found in the Code of Civil Procedure and the rules of court."

It follows, without room for reasonable controversy, that the counterclaim of the Code, in equitable actions, is a substitute for the cross bill of the former equity practice, where the affirmative relief sought by the defendant is against the plaintiff, and that the provisions of law permitting defendants to litigate between themselves matters germane to the subject of the complaint, carries with it the right of the defendant seeking relief in that regard to serve an answer in the action in the nature of a cross bill, setting up the facts and claiming such relief. Such an answer, however, is essentially a code pleading, and though the court may require it to be served on the defendant affected thereby, such service is not necessary unless so ordered to preserve the right of the party to have the questions presented by such answer tried and settled by the decree, if the co-defendant affected is before the court.

Some confusion has no doubt arisen by reason of references, in decisions, to the answer of a defendant seeking relief of his co-defendant in a proper case, as a cross bill,

leaving it to be inferred that it was the cross bill of the old practice and governed thereby, instead of an answer in the nature of a cross bill, clearly contemplated and authorized by the Code. In *Northwestern M. L. Ins. Co. v. Park Hotel Co.* 37 Wis. 125, the question was suggested but not decided, as to whether affirmative relief can be obtained against a co-defendant on an answer setting up a counterclaim. In *Hopkins v. Gilman,* 47 Wis. 581, there was an answer in the nature of a cross bill and treated as such, but nothing was said about the practice in such cases. In *Trester v. Sheboygan,* 87 Wis. 496, the question was again suggested but not decided, as to whether a defendant can obtain affirmative relief against a co-defendant upon a counterclaim. In *Ballin v. Merchants' Exch. Bank,* 89 Wis. 278, it was held that a defendant seeking relief from his co-defendant must raise the question for a decision by the court by some appropriate pleading, and it was suggested that a cross complaint was proper, as under the old equity practice, but the question of what was the appropriate practice was not necessarily involved in the case further than that a question between defendants, calling for affirmative relief, must be raised by an appropriate pleading.

It follows that a defendant, in any case where the court has jurisdiction to grant him affirmative relief, may set up the facts entitling him thereto by answer in the nature of a cross bill, if he is not so circumstanced as to set up the same by way of counterclaim. It is also the proper practice to serve the answer on the defendant affected thereby, and proper for the court, in the exercise of its inherent power, to require such service to be made, and to cause the issues to be narrowed and sharply presented for adjudication by requiring the defendant against whom relief is sought to plead to the answer setting up the cross demand. Such was the practice in this case, and the fact that the court saw fit to designate the pleading of the defendant *Kaiser* a cross

Kollock vs. Scribner and another.

bill or cross complaint did not change it. The pleading was authorized by the Code,— it was really the substitute for the cross bill under the old practice; and whether it be called a cross complaint, or cross bill, or answer in the nature of a cross bill, makes very little difference.

It is considered that the matter contained in the answer was germane to the subject of the action, hence properly pleadable; and it remains to be seen what the effect is of a dismissal of a complaint upon the answer of a defendant seeking to obtain relief against a co-defendant for matters not pleadable themselves as a cause of action in equity. There being no statute on the subject providing for retaining the case in such a situation for the purpose of settling the ultimate rights of co-defendants between themselves, the proper practice to be followed is that which formerly existed, that is, the answer of the defendant falls with the complaint and the entire action is at an end. Under the old practice, though the court would retain a case to determine the questions raised by the cross bill claiming affirmative relief as between the defendant and the plaintiff, where the cause of action in such a bill was equitable in its nature, the rule was otherwise where the relief sought thereby could be obtained by legal remedies. The reason for that rule applies with greater force as between co-defendants. Here the relief sought by defendant *Kaiser's* answer was an abatement of the debt due to his grantor by way of an assessment of damages for breach of the covenants in his deed. That was a matter for which there was an adequate remedy at law, and which could not be settled in an equitable action other than as auxiliary to an equitable action to which it was germane or in some way connected, so as to bring the defendant before the court as a party on that account. So, as the case stood before the trial court, the dismissal of the complaint for failure to state a cause of action in equity, properly carried the answer of defendant *Kaiser* with it on

the demurrer of the defendant *Scribner.*   Nevertheless, as we hold that the demurrer to the complaint was improperly sustained, such order on plaintiff's appeal must be reversed, and the order overruling the demurrer to the answer sustained.

*By the Court.*— So ordered, and that the cause be remanded for further proceedings according to law.