CHRISTIAN FEIGENSPAN, a corporation,

*v.*

KAZMIRA M. POPOWSKA.

[Decided April 21st, 1909.]

1. The covenant in a lease giving the lessee a right of renewal is binding on the grantee of the reversion.

2. An agreement to renew a lease implies a renewal for a life term on like conditions.

3. A general covenant in a lease for a renewal, while calling for a lease of similar tenor to the original lease, does not require that the renewal of the lease contain a similar covenant of renewal.

4. The provision in a lease that the lessee may "make arrangements with the lessor for renewal of another term three months before this term expires," at a specified increased rent, gives the lessee the absolute option to renew on giving the required notice before the expiration of the term and making "arrangements" with the lessor for the execution of the new lease.

5. A lease should be given such construction as will give it force and validity, rather than a construction which makes it meaningless and inoperative.

6. The word "'arrangements," as thus used, means the meeting of the parties for the execution of the necessary writing to effect such renewal.

7. In the provision of a lease that the lessee has to make arrangements with the lessor "for the renewal of another term three months be-. fore this term expires," at a specified increased rent, by the words "renewal of another term" was meant the creation of a new term of lease, having the same conditions and characteristics as the first lease, except that the rent would be a different sum.

8. A mere notice in such case by the lessee at the proper time that it intends to assert its "rights under the renewal clause in the lease for a renewal of another term," without any further action of the lessee, does not constitute a renewal of the lease, and does not entitle the lessee to enforce a renewal after the expiration of the term.

Bill for specific performance of covenant to renew lease. On motion for an injunction to restrain dispossession proceedings at law and counter motion under rule 213 to dismiss bill.

*Mr. William B. Gilmore,* for the complainant.

*Mr. Gilbert Collins,* for the defendant.

STEVENSON, V. C.

1. It has not been insisted on behalf of the defendant that the lease was not effectually assigned to the complainant. The lease is expressly made assignable upon condition that "proper and sufficient security for rent is given to the party of the first part." Although the bill does not set forth that rent was accepted from the complainant by the original lessor, Freund, or by the defendant, Popowska, the present owner of the reversion under deed from Freund, the inference seems almost unavoidable that either security for rent was given and accepted, or that the right to security was waived by acceptance of the rent.

The defendant, however, specifies as one ground for the dismissal of the bill that the right of the original lessor under the renewal covenant was not assignable. No authority is cited to sustain this proposition. No reason is suggested why a covenant

contained in a lease giving the lessee an option to renew the same should be severed from the lease, which it is conceded is assignable. Such a covenant imparts a very important quality to the estate which the lease creates. The assignee takes a lease subject to all conditions which may defeat or cut down the estate thereby created, and he has all the benefit of conditions or provisions of any kind upon which the estate may be enlarged or extended. "Covenants of renewal run with the land and bind a grantee of the reversion." *McAd. L. & T. ch. 17* § *145 p. 515; Tayl. L. & T. (9th ed.)* § *332 p. 409.*

2. The covenant, the construction of which controls this whole case, is as follows:

"And it is further agreed by and between the parties hereto that the party of the second part has to be (*sic*) make arrangements with the party of the first part for renewal of another term three months before this aforesaid term expires, at yearly rent of four hundred and twenty ($420) dollars, payable under the same conditions as above mentioned."

In endeavoring to ascertain the meaning of this covenant, which manifestly was drawn by a layman who was not expert in English composition, it is especially important to keep in mind the ancient rule that "the construction should be favorable so that the contract may if possible be supported, *nam verba debent intelligi cum effectu ut res magis valeat quam pereat."* *Chit. Cont.* (*15th Eng. ed.*) *ch. 5* § *4 p. 94.* Under the same general principle when a contract may bear two constructions, one of which makes it legal and the other makes it illegal, courts prefer the construction which renders the contract legal and hence enforceable.

I do not think that there is very great difficulty in perceiving the actual intention of the parties in entering into this covenant. The words disclose the intention. I am unable to adopt the view of counsel for the defendant that there is any ambiguity about this contract, or that it leaves something to be agreed upon between the parties with reference to the renewal for which the covenant undertakes to provide. It is conceded that an agreement to renew a lease implies a renewal for a like

term on like conditions. *Kollock* v. *Scribner* (*1897*), *98 Wis. 104; 1 Tayl. L. & T.* (*9th ed.*) § *332.*

This general covenant to renew while calling for a lease of similar tenor to the original lease does not require that the renewal lease shall contain a similar covenant to renew. The authorities all agree upon this exception and the reason for it is obvious.

There are also other covenants which accomplish their whole function during the original term and a general covenant for a renewal will not require their insertion in the renewal lease. It is not suggested that there are any such covenants in this present lease. The argument on behalf of the defendant revolves around the phrase in the covenant "has to make arrangements." It is insisted that this phraseology indicates that terms or conditions of the new lease are to be "arranged." I do not think that the language quoted will admit of the meaning thus imputed to it.

It has not been intimated during the argument that this covenant bound the lessee to accept a renewal of the lease. It has been conceded on both sides that the covenant gave the lessee an option. And yet the option is granted by implication. Literally the covenant obligates the lessee to "make arrangements" for a renewal of the term at an increased rate. What it really means is that if the lessee elects to have the lease renewed for another term the rent is to be increased and the lessee is obliged to "make arrangements" with the lessor for such renewal within a specified period.

If the reference to "arrangements" in the covenant means that something was left to be adjusted or arranged between the parties in regard to the terms or conditions of the new lease, then the insistment of counsel for the defendant undoubtedly is correct that the covenant amounted to nothing more than the ineffectual engagement which men sometimes make that they will enter into a contract at a future date upon terms then to be agreed upon. It is hardly necessary to cite authorities to sustain the proposition that such covenants are entirely unenforceable. *1 Tayl. L. & T.* § *333; Kollock* v. *Scribner, supra, 109,* and cases cited.

Applying the principle above stated that we must favor a con-

struction of this covenant which gives it force and validity rather than a construction which makes it meaningless or inoperative, I do not think that we can find an intention expressed here merely that the parties will in the future arrange or agree upon the terms of a new lease. Nothing is said about arranging terms or conditions. The subject-matter of the covenant is the renewal of the lease which means the execution of a contract which is absolutely definite in respect of all its terms. One single change or readjustment of the terms of the proposed contract making it differ from the prior contract is expressly provided for in the covenant. What then is the meaning of the clause which provided that "the party of the second part has to be make arrangements with the party of the first part for renewal of another term three months before" the original term shall expire? It seems to me that force may be given to all the words in this covenant with the exception of the word "be," which manifestly must be excised, if we refer the word "arrangement" to the transaction of the legal business necessarily attendant upon drawing and executing a renewal lease. The terms of the renewal provided for by the covenant are definite and call for no negotiation or agreement whatever. The "arrangements" are merely for effecting this renewal. Ordinarily, the arrangements for the renewal of a lease consist in providing for a meeting of the parties, the drafting of the instrument and the execution of the same.

The contention on behalf of the complainant that the phrase "make arrangements with the party of the first part for renewal of another term," means merely that the lessee is obliged to give the lessor notice of his (the lessee's) election to extend the term, seems to my mind to involve a violent wrenching of the meaning of plain English words. If giving a notice was in the mind of the parties to this instrument or the draftsman of it, it was very easy to express that idea. No one speaks of making arrangements with a man when merely giving a man a notice is intended. On the other hand, when the character of a contemplated renewal of a lease of real estate for five years is definitely settled so that in case the tenant elects to take such a renewal, there is nothing left for negotiation between the landlord and tenant, the only

way in which such a renewal term can be created is by a written lease. Arranging for such renewal therefore seems to be capable of meaning nothing but arranging for the execution of the necessary writing to effect such renewal.

It is not necessary to discuss the distinctions which have been drawn in construing covenants of renewal between the meaning of the word "renew" and the meaning of the word "extend." Such variations of phraseology are important where there is any room for doubt as to whether the covenant calls for the execution of a lease or merely provides for an extension of the original term by notice. In this case, the covenant not only protects the lessor from all uncertainty in regard to the status of his property during the last three months of the term by limiting the time in which the lessee is to exercise his option for a renewal, but it assures to the lessor in case the option is exercised, the possession of an executed lease to which he may turn for the enforcement of all his rights against the lessee. The design of the covenant was not that the original lessee or any assignee could give notice and then hold over; the design of the covenant, I think, is to place the landlord three months before the expiration of the term in possession of a new lease which would certainly make his position more advantageous, especially where the holder of the term was an assignee, than that which he would occupy in case the original lease were extended by a mere notice.

It may be observed that the covenant provides for arrangements "for renewal of another term" and not "for renewal of the lease." The use of the word "term" seems to me to be natural and proper. The parties have in mind the arrangements which are necessary for the creation of a new term having the same conditions and characteristics as the first term except that the rent is placed at a different sum. The yearly rent reserved in the lease was $336 for the first year, $360 for the second and third years, and $400 for the fourth and fifth years. The renewal of "the term" created by this lease at a higher yearly rent, which is specified in the covenant, it seems to me, is the same thing as the renewal of the lease at such higher rent. The only obligations of the lessee which are not expressly covered by

the provision in the covenant for the payment of rent seem to
be an obligation to keep the interior of the demised building
in repair and an obligation to pay the water tax, which last-
mentioned expense is described as "an additional rent." A
renewal of the term plainly must carry with it the maintenance
of these obligations.

3. The difficulty about the complainant's case as stated in
his bill, to my mind, arises from the failure of the bill to dis-
close that the complainant performed or offered to perform on
his part this covenant providing for a renewal. This objection
is amply specified in the notice to dismiss the bill. The cove-
nant, as I have construed it, bound the complainant to "make
the arrangements" with the defendant "for renewal of another
term." The bill does not show that the complainant either
made these arrangements or made any effort to make them or
have them made. The bill while incorporating the entire lease
by proper words of reference undertakes to set forth the legal
effect of the covenant. It describes the covenant as one whereby
the lessor agreed "to grant a renewal of the said term to the
party of the second part or his heirs or assigns upon giving three
months' notice to the party of the first part," &c. Acting upon
this interpretation of the covenant the complainant gave the
defendant written notice, dated August 14th, 1908, to the effect
that under the lease the complainant was "entitled to a renewal
of another term for five years. The notice concludes as follows:
"We, Christian Feigenspan, a corporation, hereby give notice to
you as present owner of said property that we intend to assert
our right under the renewal clause in the aforesaid lease for
the renewal of another term at the yearly rent of four hundred
and twenty ($420) dollars per year, as provided in said clause."

It will be observed that this notice says nothing whatever
about having a renewal lease drawn or executed. The complain-
ant manifestly acted upon the theory that all he was obliged to
do three months before the expiration of his term was to give
notice of his election to have his term extended for another five
years at the yearly rent specified in the covenant. The notice
ignores the right of the defendant to have a new lease executed

by the parties so that the landlord's rights would be based upon an original instrument directly binding the tenant under his own signature instead of an old lease made between other parties and a written notice purporting to have come from the complainant to the defendant, the authenticity and effect of which might at any time be open to doubt and dispute.

The bill is entirely silent as to any transaction between the parties after the service of this written notice and counter notice from the defendant through his attorneys to complainant, dated December 17th, 1908. This counter notice recites that the complainant "has failed to make arrangements" with the defendant "for another term of letting of said premises pursuant to the terms of the lease," &c., and announces that the defendant will require the complainant to surrender possession on January 1st, 1909, the date on which the term reserved in the lease would expire.

Presumably the complainant paid the monthly rent reserved in the lease and we may surmise that the defendant did not remain entirely silent after being served with the formal written notice from the complainant, dated August 14th, 1908. The bill, however, gives no information on this subject. If the defendant upon receiving the written notice from the complainant denied the right of the complainant to a renewal, or declined to execute a renewal lease, the complainant would not be obliged to persist in making abortive efforts to effectuate "arrangements" with the defendant which the defendant absolutely declined to make. *Les nil frustra.* We cannot, however, assume that if the complainant had followed up its notice of August 14th, 1908, with tendering itself ready and willing to enter into a new lease in accordance with the covenant, the defendant would have refused to carry out the covenant on his part. The case set forth in the bill presents this situation: The lessee has the option to have a renewal lease made and in case he exercises his option he is required to make the arrangements, *i. e.,* to enter into such renewal lease with the lessor three months before the expiration of the term. The lessee gives notice of the exercise of his option four and one-half months before the expiration of

the term and then does nothing more. Presumably the defendant was standing by and waiting for the complainant to come forward and enter into the definite written lease, which under the covenant the lessor was entitled to have instead of a mere notice of renewal of an old lease between the lessor and a third party. As the complainant did not come forward so far as appears from the bill, or make any effort to perform its covenant and make the "arrangements" which it was required to make three months before the expiration of the term, a few days before the expiration of the term the defendant gave the complainant reasonable notice to surrender possession on the day when the term would expire. I cannot see that the lessor had not a right to do precisely what he did in this case. The lessor was under no legal or equitable obligation to undertake to correct the possible or probable error under which the complainant was laboring in regard to the meaning of this covenant. The complainant asked no advice from the defendant, but served him with notice not that it would make the new lease as provided by the covenant, but that it intended to assert its right for a renewal.

4. The result is that no case is made out by the bill, as it is now framed, for the specific performance of the covenant for a renewal lease. The bill, therefore, is without equity and if not amended must be dismissed.

The motion for an injunction will not be decided at present, but may stand over, the restraining order still remaining in force, until the complainant has had a reasonable time to amend its bill and present evidence establishing a sufficient excuse for its failure to make or attempt to make the "arrangements" above referred to within the period prescribed in the covenant.