The bill seeks to restrain an attempted forfeiture of a lease under which the complainants are occupying a tract of land in Middletown township, Monmouth county, intersected by State Highway Route No. 4, owned by the defendant corporation and upon which is erected a large roadway stand maintained and operated by the complainants. The facts out of which this controversy arose are as follows:
On October 5th, 1923, one Coddington, who was then the owner of the premises in question, but who later conveyed to the defendant, made a written lease for the premises to Emil Sollaneck and Samuel Walters for a term of four years from January 1st, 1924. The lease contained the following clause: *Page 486 
"It is understood that the party of the second part will have the option of renewing this lease for an additional term of four years if they so desire on the same rental."
On October 16th, 1923, Walters assigned his interest in the lease to Sollaneck by a written assignment attached to the original lease. Sollaneck entered into possession and erected the road stand now occupied by the complainants. On June 2d he entered into an agreement with George E. Fournier and James Milonas by which, in consideration of $6,600, to be paid as therein provided, he agreed to assign the lease to Fournier and Milonas. The actual assignment was not to be delivered until the consideration was fully paid. Possession of the premises was delivered to Fournier and Milonas on the date of the agreement. On December 2d 1925, Fournier assigned his interest in the premises under the lease to the complainant. From June 2d 1925, to December 2d 1925, Fournier and Milonas occupied the premises, and from December 2d 1925, to the present time, James Milonas and Michael (Manuel) Milonas have been in possession. Coddington conveyed to the defendant prior to the agreement between Sollaneck and Fournier and James Milonas, and since that time the rent has been paid to the defendant by the successive occupants. During the occupancy by the complainants and up until January 1st, 1928, the rent was paid periodically as it fell due to Charles D. Merz, secretary of the defendant corporation. Checks were uniformly drawn to the order of Mr. Merz personally, and the proceeds accounted for by him to the defendant. Following this custom, on December 15th, 1927, complainants sent their check for $133.33 to Mr. Merz, stating that it was for the first payment on the rent for 1928 and that they were thereby exercising their option to renew the lease for a further term of four years. Merz presented this check at a meeting of the board of directors of the corporation on December 31st, 1927, which, apparently, took no action either to accept or reject it, but no objection was made to the fact that it was drawn to the order of Merz personally. On January 4th, Merz returned the check to the complainants in a letter stating *Page 487 
that he had resigned as secretary of the club on December 31st, 1927, and also "I submitted to the directors and stockholders of the club that you were going to take advantage of the option of the renewal of the lease for the stand on the highway but nothing was done in the way of either accepting it or not. What the new board of directors have done or will do I do not know, but you can get information from the new secretary" and "that the newly elected secretary is Edward A. Compton, Main street, Keansburg, New Jersey." Complainants wrote to Compton on January 20th, asking to be notified of the next meeting of the defendant corporation, to which Compton replied on January 30th, 1928, that the next meeting would be February 2d. Negotiations between the parties then ensued, complainants insisting upon their right to renew and defendants pressing for a new lease, but without definite results. On February 18th, complainants sent to Mr. Compton, the new secretary, the same check which they had previously sent to Mr. Merz. Compton mailed the check back to the complainants in a letter dated February 21st, but the letter was never delivered and was finally returned to the writer on March 8th, 1928. In that letter no objection was made to the form of the check, but the secretary said "the directors hold that the Sollaneck lease expired on January 1st, 1928. Therefore they refuse to renew the lease on the same conditions." On March 2d, Compton wrote to complainants proposing a new lease for a portion of the premises at an advanced rental, whereupon complainants immediately consulted counsel, the present solicitors, who, on March 12th, 1928, wrote to the club, declining to discuss the proposed new lease and insisting that complainants had exercised their option to renew and standing on that renewal. On May 1st, 1928, complainants offered to pay the second installment of the 1928 rent in cash but it was refused. Nothing was said at this time about the check which had been delivered to Merz, the former secretary on December 15th, 1927, although it is obvious that the new secretary had it in his possession at the time. The complainants remained in possession of the premises and no further communication *Page 488 
was had between the parties until on June 5th, 1928, when Compton returned the check to complainants with a letter stating that the club directed it returned "inasmuch as you did not exercise your option to renew the lease within sufficient time," having in the meantime retained the check in his possession. Compton's explanation of his retention of the check between March 8th and June 5th is that he did not know how to reach complainants as his former letter had been returned because not delivered. But after the receipt of the letter of March 12th from complainants' solicitor Compton knew that complainants were represented by counsel and he could have returned the check to such counsel. Enclosed with the letter of June 5th was the following notice:
"June 5th, 1928.
Mr. Geo. Milonas, Lone Pine Inn, State Highway, Middletown Township, New Jersey.
Dear Sir:
Inasmuch as your lease has expired on the Harmony Country Club property, you are advised that in accordance with notice served on you on May 3d last, you are to remove road stands owned and occupied by you from off the country club property. Same are to be removed within a week from the date hereof. If the same are not removed action will forthwith be taken to compel the removal thereof.
 Yours very truly, HARMONY COUNTRY CLUB, INC. E.T. COMPTON, Secretary."
The notice of May 3d referred to in the letter is not in evidence.
This bill was filed on June 15th. There is no doubt in my mind but that complainants did everything they were required to do under the terms of the lease to exercise the option to renew. By acceptance of rent from the complainants for a period of two years defendants had recognized complainants as its tenants, were bound thereby, and cannot now be heard to deny complainants' right to renew under the lease. Gabarine v. Reade, 95 N.J. Eq. 495; Sparks v. Lorentowicz, 106 N.J. Eq. 178; Orange Motors,Inc., v. Meyer, 107 N.J. Eq. 461. *Page 489 
There is no doubt but that the complainants as assignees succeeded to the right of renewal. Feigenspan v. Popowska,75 N.J. Eq. 342; Johns v. Winters (Pa.), 96 Atl. Rep. 130; 35C.J. 1013. It is not disputed that the lease itself is assignable, but defendant claims that the right to renew was personal to the original lessees and did not pass with the lease on assignment, claiming that the words "if they so desire" in the renewal clause indicate a contractual restriction, such as was contemplated by the language in 35 C.J. 1013, supra. But I cannot accede to that argument.
Defendants cite Dimeo v. Ellenstein, 106 N.J. Eq. 298, andCifelli v. Santamaria, 79 N.J. Law 354, in support of their contention that the right to renew did not follow the assignment; but I do not consider Dimeo v. Ellenstein as opposed to the proposition that the right to renew vested in the assignees on assignment of the lease, and in Cifelli v. Santamaria, supra, there was no assignment of the lease. The lease there prohibited subletting and the attempt to renew was by a sublessee. In that case Mr. Justice Parker, speaking for the supreme court, concedes the right of the lawful assignee to exercise the assignee's option of renewal, citing 18 Am. Eng. Encycl. L. (2d ed.)693; 24 Cyc. 997, 998.
In Johns v. Winters, supra, it was held that a covenant to renew a lease runs with the land and entitles the lessee-assignee to a renewal, and this, even where the lease by its terms is not assignable except upon consent of lessor, providing the lessor accepts rent from the assignee; and in Feigenspan v. Popowska,supra, it was held that a covenant in a lease giving the lessee the right of renewal is binding on the grantee of the reversion. The jurisdiction of a court of equity to relieve against unjust forfeitures cannot be questioned. Lincoln Furniture Co. v.Bornstein, 100 N.J. Eq. 78; H. Windholz Son v. Burke,98 N.J. Eq. 471; Sparks v. Lorentowicz, supra, and cases there cited.
In H. Windholz Son v. Burke, supra, Vice-Chancellor Backes said: *Page 490 
"The relief the complainant presently stands in need of is the protection of its possession, not damages, and while the law may grant compensating damages for the injury now threatened, equity prevents the infliction of the injury altogether. It is obvious that the defense at law is not complete and adequate. Equity will not refuse to interpose when the remedy is more nearly complete and perfect in equity than at law. Hanwood v. Jarvis Schafer, 27 N.J. Eq. 247."
The application of that language to the instant case is obvious. In Sparks v. Lorentowicz, supra, dispossess proceedings had been already begun. In the present case they had been threatened and it was not incumbent on the complainants to await the actual institution of such proceedings before filing the bill.
Defendants insist that the complainants' chain of title to the lease is not perfect; that it does not appear in evidence that Walters relinquished his rights under the original lease; and that he is not a party to these proceedings. Defendant's counsel have evidently overlooked Walters' written assignment attached to the original lease, marked Exhibit C-5. On this point defendants also claim that the agreement between Sollaneck and Fournier and Milonas was not an assignment nor intended as such; that it was really an agreement to assign. This is true, but Fournier and Milonas were undoubtedly entitled to an assignment under the agreement after the consideration was paid, and equity will consider as done that which ought to be done; and besides, it does not lie in the defendant's mouth to challenge complainants' title after having accepted rent from complainants for a period of over two years. Objection was also made at the final hearing, but not pressed in defendant's brief, that the check for $133.33 given to Mr. Merz on December 15th, 1927, was not good because of an insufficient balance at the bank on which it was drawn. But the bank cashier testified that complainants had two accounts and that if this check had been presented it would have been honored, similar mistakes having previously occurred and the bank always honoring such *Page 491 
checks. But the fact remains that the check was not presented and no objection to its form or sufficiency was ever made by defendants until after this suit was begun. I mention the matter now only to indicate that I have not overlooked it.
In determining the rights of the parties to this controversy, it must be borne in mind that the complainants are foreigners, that Michael (or Manuel) Milonas, the only one of the complainants who testified and who apparently was the one who transacted all of the business in connection with this lease, has a very limited knowledge of the English language, as is shown by his letter to Compton (Exhibit D-4) dated February 18th, 1928. On the witness stand he showed an unfamiliarity with our language which made it difficult at times for him to understand the questions of counsel, although he spoke the language fairly well. But my own examination of this complainant while he was on the witness stand convinces me that he was truthful and reliable.
The complainants are entitled to a decree.