The bill is by a tenant against its landlord and seeks restraint against the enforcement of a judgment for possession entered in the district court of the second judicial district of Monmouth county in a suit by the landlord against the tenant. *Page 199 
A clear understanding of this controversy requires a statement of the circumstances out of which it arose.
In March, 1932, Paradise Park, Incorporated, was the owner and holder of a second mortgage on a tract of approximately one hundred and fifty acres of land and the buildings thereon located in Monmouth county. There was a prior mortgage of $19,000 held by the Bankers Trust Company of New York. Both mortgages were in process of foreclosure and a decree for $84,000 had been entered in the foreclosure suit on the second mortgage and the property was about to be sold under that decree. Paradise Park, Incorporated, was without funds to protect itself on the foreclosure of the first mortgage. In this posture of affairs Paradise Park, Incorporated, entered into an agreement with William English Strunsky to lease a portion of said property to Strunsky for a period of ten years from the date of acquiring title at the foreclosure sale at a rental of $3,000 per annum, to be paid as follows:
"The party of the second part shall advance during the said term of letting, the full carrying charges of the entire real property first above described to wit: Interest upon the said first mortgage, taxes and assessments if any; insurance and amortization upon the said first mortgage; if at the end of any year of said term of letting, the amount so advanced by the said party of the first part is less than the sum of $3,000.00 he shall pay to the party of the first part, the difference between the amount so advanced and the said sum of $3,000.00; if at the end of any year of said term of letting, the amount advanced during said year by the said party of second part, as aforesaid, shall exceed the said sum of $3,000.00 the amount of such excess shall be charged against said party of the first part and repaid at the expiration of said period of letting or upon a sale of said real property as hereinafter provided for."
Paradise Park, Incorporated, also agreed to procure a discontinuance of the action to foreclose the first mortgage; a two year extension of that mortgage and to purchase the mortgaged premises at the sale under its foreclosure decree. This arrangement involved the payment of delinquent taxes, costs of foreclosure of the first mortgage, counsel fees and expenses; and of the sum necessary to cover these items Strunsky agreed to, and did, advance the sum of $2,540 *Page 200 
which was to be repaid to him by Paradise Park, Incorporated, at the termination of the lease or in the event of sale of the leased premises.
After the execution of this agreement Dorez, Incorporated, succeeded to the rights of Paradise Park, Incorporated, and Red Oaks, Incorporated, succeeded to the rights of William English Strunsky; and under date of September 28th, 1933, a formal lease was entered into between Dorez, Incorporated, as lessor and Red Oaks, Incorporated, as lessee. It incorporated, by reference, the terms of the agreement referred to and provided that the term of the tenancy should begin on September 15th, 1932, and end on September 15th, 1942. Title to the premises was not obtained by the lessor until September 14th, 1932. The lessee entered into possession of the premises shortly after the agreement which was incorporated in the lease was executed and still continues in possession. At the time it entered into possession the buildings on the premises were in a dilapidated condition and preparatory to occupancy the lessee expended a large sum of money (said by the complainant to be $20,000, and admitted by the defendant to be a substantial sum) in remodeling the main building and converting it into a modern hotel. After the lessee went into possession it developed that there had been a miscalculation by the first mortgagee of the amount of delinquent taxes and $800 more than was anticipated was required to pay the arrearages. The lessor being without funds, the lessee advanced this sum in addition to the $2,540 already mentioned and also paid the full taxes for 1932, although under the terms of the lease it was not obliged to do so as its term did not commence until September 15th. The lessor was liable for the first half and a proportionate share of the second half of the 1932 taxes, but the lessee had to pay them to protect its estate. Partly as a result of these unanticipated payments the subsequent taxes and interest charges were not paid upon their exact due date; but the first mortgage held by the Bankers Trust Company contained a sixty-day grace clause applicable to interest, taxes and assessments, and with the knowledge and acquiescence, if not with the express approval, of the lessor, the lessee *Page 201 
arranged directly with the first mortgagee to defer certain of the interest and tax payments. The following schedule indicates payments accordingly:
 Taxes Due Paid
1931 taxes, 2d half December 1, 1931 Aug. 8-Aug. 22, 1932
1932 taxes, 1st half June 1, 1932 March 3, 1933
1932 taxes, 2d half December 1, 1932 August 17, 1933
1933 taxes, 1st half June 1, 1933 November 29, 1933

With this last payment the arrearages of taxes were paid in full for the first time since the lessee went into possession of the premises. With full knowledge of the time and manner of payment of the previous taxes, Mr. Garlock, who is one of the officers of the lessor company, shortly after December 1st, 1933, called William Strunsky on the telephone and asked if the mortgage interest and amortization installments due December 1st, and the second half of the 1933 taxes, also due December 1st, had been paid and was told that they had not been paid but that payment was anticipated out of receipts during the Christmas holidays. Without further notice, on December 13th, 1933, Dorez, Incorporated, the landlord, instituted dispossess proceedings in the district court of the second judicial district of Monmouth county, alleging default in payment of the amount represented by interest and amortization installments on the first mortgage and the second half of taxes for 1933 due December 1st and insurance premiums, all amounting to the sum of approximately $1,600. The summons issued in those proceedings was returnable December 22d 1933, and on December 20th, 1933, the defendant lessee filed a demand for a jury trial. The case was adjourned to January 8th, 1934, on which date, having in the meantime withdrawn that demand, it deposited with the clerk of the court the sum of $1,694.51, the agreed amount of unpaid carrying charges. The court then ruled that by the making of that deposit all defenses were waived and that, as the deposit was not made before the return day, it was unavailing to defendant lessee and on January 19th, 1934, gave judgment of possession to the plaintiff and ordered the money paid into court returned to the lessee. The present *Page 202 
bill in this cause was filed after the entry of judgment but before the issuance of any warrant for possession. In the interim the lessee was offered the alternative of purchasing the leased premises for a substantial sum or entering into a new lease at an increased rental.
On behalf of the defendant, it is contended that the judgment of the district court is res adjudicata and a bar to the present suit; that this court has no jurisdiction of the cause stated in the bill of complaint, and that the complainant has an adequate remedy at law by action of trespass if the judgment of the district court is erroneous, citing in support of this contention McGann v. La Brecque Co., Inc., 90 N.J. Eq. 526;affirmed, 91 N.J. Eq. 307, and Rafferty v. Schutzer, 107 N.J. Eq. 613.
The jurisdiction of the court of chancery to prevent unjust forfeitures between landlord and tenant is too well established to be questioned. H. Windholz Son v. Burke, 98 N.J. Eq. 471;Sparks v. Lorentowicz, 105 N.J. Eq. 18; affirmed, 106 N.J. Eq. 178; Milonas v. Harmony Country Club, 108 N.J. Eq. 485; RivoliHolding Co., Inc., v. Ulicny, 109 N.J. Eq. 54; 1 Pom. (4thed.) §§ 381, 433, and notes. Where the attempted forfeiture is based upon the non-payment of rent, relief is uniformly given upon payment of the amount due with appropriate interest and costs. Where the forfeiture is provided for merely as security for the payment of money "equity regards such payment as the real and principal intent of the instrument" and will relieve upon payment. 1 Pom. (4th ed.) §§ 381, 433. A fortiori, where the lease contains no provision for forfeiture or re-entry upon default in payment of rent, as here.
It is not now disputed that if the lessee had made its deposit in the district court prior to the return day of the summons in the dispossess proceedings, the lessor would have been obliged to accept it and the lessee would have been protected in its possession; and that before entry of judgment this court could have properly restrained the proceedings.
The right of a tenant to be relieved in equity against forfeiture for non-payment of rent arose very early in the history of the English law. It was recognized and confirmed by *Page 203 
statute of 4 George II, c. 38 §§ 3, 4; 2 Tiffany, Landlord andTenant, 1412 § 3. Similar recognition of this ancient right is contained in our Landlord and Tenant act. 3 Comp Stat. p. 3069;
and see Fleming v. Fleming Hotel Co., 69 N.J. Eq. 715. At the final hearing, in answer to a question by the court, counsel for the defendant stated that its only object in instituting the dispossess proceedings was the collection of the rent due. The court then inquired why, if that were so, the money which was deposited in court by the lessee was not accepted by the lessor. The reply was, repeated in the brief, that the landlord wanted a decision on the question as to whether or not the rent installments represented by mortgage interest and installments, taxes, insurance, c., were in default if not paid on their respective due dates, or only if not paid before the expiration of the grace period allowed by the first mortgage for such payment. It seems to me that the answer to that question is plain. It will be observed that there is nothing in the lease, or the agreement which preceded it, which specifies the time of payment of rental or carrying charges included therein. The agreement is not to pay, but to "advance," the full carrying charges. The ordinary construction of the word "advance" is "to pay beforehand." Here it evidently meant that the lessee should put the lessor in funds to pay the carrying charges; and, as a grace period of sixty days was allowed the lessor for such payment, I think the lessee would have been in time if he had done so any time before the lessor was obliged to pay them to avoid default on the mortgage. But we are not left to conjecture as to the meaning of this provision in the lease. The lease being silent as to the time of payment, the parties by practical interpretation have supplied the omission, and their own interpretation of the language used must control. Rivoli HoldingCo. v. Ulicny, supra; Thropp v. Field, 26 N.J. Eq. 82;Kerney v. Johnson, 104 N.J. Eq. 244. Prior to December 1st, 1933, the date upon which it is alleged default occurred, the parties themselves had interpreted this language to mean advance or pay within the period of grace fixed or allowed by the first mortgagee. The lease itself contained no material provision not contained in the original *Page 204 
agreement, and pending its execution the agreement was in force and the relation of landlord and tenant existed thereunder. The parties' own interpretation of the meaning of that agreement constituted an interpretation of the lease. The payment of the carrying charges on their exact due date had been waived by the landlord prior to December 1st, 1933, and it was inequitable under the circumstances for it to insist upon immediate payment of interest, amortization and taxes which fell due on that day.Thropp v. Field, supra; Sparks v. Lorentowicz, supra; RivoliHolding Co. v. Ulicny, supra.
It is significant that the alleged default upon which action was taken by the lessor to repossess itself of the premises was that upon the first installment of rent falling due after the execution of the lease. The motive underlying the defendant's action is best indicated by the alternative proposition submitted by defendant to complainant immediately after the entry of the judgment of possession, notwithstanding counsel's insistment that the purpose of the proceeding was the collection of rent. It was only two days before December 1st that the arrearages of taxes had been finally paid and this with the knowledge and acquiescence of the landlord.
The sole remaining question is, therefore, whether or not relief is barred by the judgment of possession entered in the district court. The only two cases which lend any support to the defendant's contention are McGann v. La Brecque Co., Inc.,supra, and Rafferty v. Schutzer, supra, but neither of these cases, in my judgment, is applicable. It will be remembered that the lease reserves no right of forfeiture of the term or right of re-entry to the lessor and also that the complainant lessee is still in possession of the premises. In Brower v. Board ofCommissioners of the City of Asbury Park, 103 N.J. Eq. 176, the city had declared a forfeiture of a lease and re-entered. This court held that the right of forfeiture had been waived by the city and possession was restored to the lessee. In RivoliHolding Co. v. Ulicny, supra, a forfeiture had been declared and the landlord had made a forcible re-entry. The court held that no right of forfeiture had been reserved for non-payment of rent, and "if there were, equity would relieve against forfeiture upon payment;" and restored *Page 205 
the tenant to possession. In Friedlander v. Grand, 116 N.J. 537,
where the landlord dispossessed the tenant by force, the court of errors and appeals adopted the opinion of Vice-Chancellor Bigelow in which he said:
"The legal remedy of complainant, in case he is wrongfully evicted by his landlord, is an action for damages or ejectment.Miller v. Kutschinski, 92 N.J. Law 97; 36 C.J. 70. But he may have an injunction against interference of his possession by the landlord if the circumstances of the case disclose that the relief at law is inadequate and that the injury will be irreparable. McGann v. LaBrecque Co., 90 N.J. Eq. 526; 91 N.J. Eq. 307."
This is, in effect, an assertion by our court of last resort of this court's power to grant the relief which was awarded to the tenants in the Brower and the Rivoli Cases. If relief could be afforded to the tenant in those cases, where actual possession had been obtained by the landlord by force, I can see no reason why the same relief cannot be granted before possession is delivered to the landlord by the constable under a warrant for possession. The judgment of possession is not conclusive upon the parties. "It can be set up as a shield by the officers of the law, but not by the landlord." Coe v. Haines, 44 N.J. Law 134;Reade v. Bodine, 2 N.J. Mis. R. 458; Richardson v. Smith,74 N.J. Law 111. In the latter case Mr. Justice Pitney said that the purpose of the summary proceedings for possession "is merely to secure a warrant that shall justify the constable or other executive officer in removing the tenant from possession and putting the landlord into possession." See, also, McWilliams v.King and Phillips, 32 N.J. Law 21; Jacobson v. Gruenberg,100 N.J. Law 77. In all these cases, it is held that a judgment of possession is not binding upon the parties in any subsequent legal investigation. And if not binding on the parties in any subsequent legal investigation, why should it be in any subsequent equitable investigation? It is true that under section 113 of the District Court act no appeal or certiorari lies from that court's judgment. But the language of that section has been uniformly strictly construed. Coe v. Haines, supra;Richardson v. Smith, supra; McWilliams v. King and Phillips, *Page 206 supra; Jacobson v. Gruenberg, supra. It does not purport to, nor could it, constitutionally, affect the pre-existing jurisdiction of the court of chancery to relieve against unjust forfeiture. In McGann v. La Brecque Co., Inc., supra, Vice-Chancellor Lane said: "The legal and equitable rights of parties remain the same after the judgment of possession as before." And in McWilliams v. King and Phillips, supra, Chief-Justice Beasley said: "It does not seem to me at all probable that the legislature designed, by a prompt proceeding before a justice of the peace, which is subject neither to appeal nor review by certiorari, to adjudge definitely the right to possession to houses and lands, no matter how difficult or abstruse the questions of law involved, or how valuable the interest at stake might be." The application of this language to the present controversy is obvious.
The judgment of the district court should have no higher standing than the judgment of any other court, except as provided by statute. And since the famous controversy between Lord Coke and Lord Ellesmere in 1616 the power of the court of chancery to restrain the execution of a judgment at law upon equitable grounds has seldom been questioned. A judgment from which no appeal lies would seem to invite, rather than repel, intervention upon such grounds. The fact that damages in an action of trespass are recoverable (perchance) by the tenant from the lessor if the judgment is wrong, is not a bar to relief here. The relief the tenant needs is not damages but protection in its possession.Rivoli Holding Co. v. Ulicny, supra. The McGann v. LaBrecque Co., Inc., and the Rafferty v. Schuster Cases are clearly distinguishable from the case at bar. In neither was forfeiture for non-payment of rent involved. In the McGannCase, the term had ended pursuant to notice and the main issue before the court concerned the sufficiency of the notice. Here there was no notice of the termination and no right of termination, forfeiture or re-entry for non-payment of taxes was reserved in the lease itself. The report of the Rafferty
decision is meagre, but inspection of the file discloses that the tenant had been evicted and in subsequent proceedings judgment had been entered in favor of the landlord only after a trial on *Page 207 
the merits before a jury. The tenant sought, not protection of her possession, but restraint to permit her to sell her furniture and the enforcement of the landlord's consent to the assignment of the lease. She did not offer to pay the rent due — her defense in the district court was constructive eviction, and not payment or tender of payment of rent. She sought to escape payment rather than the right to make payment late. The instant case is more analogous to the Rivoli Case where Vice-Chancellor Backes laid particular stress upon the fact that the forfeiture of the lease would mean the destruction of the tenant's business. Here the tenant has built up, as the evidence shows, a profitable business; has expended a substantial sum in the improvement of the defendant's property, and the termination of the lease would mean the loss of its business and good will with no assurance of recovery of adequate damages for losses sustained. In McGann v.La Brecque Co., Inc., supra, Mr. Justice Swayze said that "since the correctness of the present judgment for possession is not disputed and no equitable right was involved, the jurisdiction of the court of chancery could not be sustained." But here the correctness of the judgment of the district court is questioned. It is true that the judgment is not reviewable in the law courts, but I think it is erroneous. Section 108 of the District Court act permits the payment of rent "on or before the return day of the summons" in which event the proceedings end and the tenant remains in possession. But it seems to me that section 108 must be read in connection with section 111 of the same act, which provides that if at the time appointed in the summons "orat the time to which said suit may be adjourned, it shall appearthat the rent claimed and costs accrued have not been paid, the court may issue a warrant for possession." Read together, these two sections give the tenant the right to pay the arrearages of rent on or before the original or the adjourned return day. It was so held by Judge Guild in Kitchel v. Racciepio, 21N.J.L.J. 331, as long ago as October, 1898. But here the district court held that by the deposit the tenant gained nothing and lost all; incongruous, at least. Counsel for the defendant insists that inasmuch as the defense of waiver *Page 208 
could have been interposed in the district court and the tenant neglected to do so, it is barred from availing itself of that defense here. But the answer to that argument is that the tenant did not neglect but was prevented from doing so by the ruling of the court. If the court was correct in this ruling then it is apparent that the strict rules of law prevented the interposition of the defense of waiver. One of the fundamental purposes of the court of chancery is to relieve against injustice resulting from the application of the strict rules of law. And "equity will, in a proper case, relieve against a forfeiture and restrain summary proceedings to dispossess a tenant even though there are legal defenses available in the suit at law if the remedy in equity is more complete." H. Windholz Son v. Burke, supra. If there was a waiver the tenant should have the advantage of it somewhere. If not in the district court, then in some other appropriate tribunal. The defense of waiver "had its inception as a principle in equity and * * * is still recognized as a ground of equitable jurisdiction." Sparks v. Lorentowicz, supra. The complainant is entitled to an injunction and I will advise a decree in accordance with these conclusions.