## THOMAS B. STOUT

*v.*

## THE EXECUTORS OF HENRY H. SEABROOK, deceased.

1. To render the lapse of the statutory period a bar to an action for an account by one partner against another, it must appear that the account has been closed for six years.

2. Great delay is a good bar in equity.

3. A decree requiring a copartner to account, should be denied in every case where it appears the party seeking the account, has, by his laches, rendered it impossible for the court to do full justice to both parties.

4. If, in an action for an account, the court is satisfied nothing is due to the complainant from the defendant, a dismissal must be directed.

On final hearing on bill, answer and proofs.

*Mr. William H. Vredenburgh* and *Mr. Joseph D. Bedle*, for complainant.

*Mr. George C. Beekman*, for defendants.

THE VICE-CHANCELLOR.

This is a bill for an account. Henry H. Seabrook and Eusebius M. Walling formed a copartnership in 1851, to carry on the business of country merchants, at Keyport, Monmouth county, and continued together as copartners until April 1st, 1858, when they dissolved by consent. It is admitted the firm, at that time, was largely indebted to Mr. Seabrook. He retained the assets. There is some dispute whether he kept them under a written or verbal contract, but it is quite unimportant whether it was one or the other, for it is agreed the terms of each were substantially the same. He was to convert the assets into money, pay the debts, and, if anything remained, pay Walling his share of the surplus. At the dissolution, the value of the merchandise on hand was estimated at $1,400; and the firm also held four mortgages, securing principal sums amounting in the aggregate to $1,421.48, besides a large number of notes and accounts on book. Walling, after the dissolution, made two conveyances to Seabrook; the first bears date September 5th, 1859, and conveys two tracts of land upon which Walling, February 19th, 1858, executed a mortgage to the firm for $900; and the second bears date January 14th, 1860, and conveys three parcels of land. The first purports to be founded on a consideration of $975, and the second on a consideration of $270. Walling says they were not intended to be absolute conveyances, but were merely given to further secure the payment of Seabrook's claim. The complainant, on the 11th of April, 1851, became surety on a sealed bill, made by Walling to Seabrook, for $2,200. This obligation remained outstanding until December 11th, 1860, when the complainant paid a part of the interest in arrear in cash, and gave his own bill to Mr. Seabrook for

$2,256, in lieu of it.   Since then the complainant has made three payments on his bill.    The first, of $656.08, was made January 12th, 1864; the second, of $650, April 12th, 1864; and the last, of $738.35, August 10th, 1872.    The last, he says, discharged the whole amount due.    It will be observed, his payments amount to less than the principal sum; how the balance was paid does not appear.    The last payment was made to Mr. Seabrook's executors, he having died March 30th, 1872.    On the 6th of April, 1860, Walling assigned to the complainant whatever interest he might have in the assets of the firm, after the payment of Seabrook's debt.    Both Walling and the complainant have had free access to the books and papers of the firm at all times; the complainant has had possession of the books part of the time, and made collections on them for the benefit of Seabrook.    In April, 1867, the complainant had possession of the books for some weeks, and they were then carefully examined by him, his son Joseph and Mr. Walling.    Joseph swears that at that time he made a copy of the account between Mr. Seabrook and the firm, appearing on the books, by which it appeared there was still due to Mr. Seabrook the sum of $545.80.    The accuracy of this account is now assailed; it is said it contains improper charges and omits large credits, and that by an accurate statement of the account, at that time Mr. Seabrook was indebted to the firm in a large sum.    Every fact now known to the complainant was known to him in 1867.    It is not pretended that he ever questioned the accuracy of the account in the presence of Mr. Seabrook, or asked that it be corrected or changed in a single particular.    Since the examination and copy were made, the complainant has paid to the representatives of Mr. Seabrook the balance due on his sealed bill. Mr. Seabrook has died, and one of the books containing a part of the account in question, as well as other important evidence, has been lost.

To this action, the defendant, in the first instance, set up the statute of limitations, by plea.    The bill was filed May

20th, 1874. On the issue thus raised, it was shown that two payments had been made to Mr. Seabrook, on what was then believed to be firm claims, within six years immediately preceding the commencement of the suit, and the plea was therefore found not true, and overruled. It was held that, to render the lapse of the statutory period a bar to an action for an account by one partner against another, it must appear that the account has been closed for six years, and that no transaction has occurred within that time for which the defendant is liable to account, and that the bar of the statute does not begin to run against each item from the time it becomes a part of the account. *Coll. on Part.* § 374; *Barber* v. *Barber*, 18 *Ves.* 286; *Ault* v. *Goodrich*, 4 *Russ.* 430; *Coster* v. *Murray*, 5 *Johns. Ch.* 522, 530; *Atwater* v. *Fowler*, 1 *Edw. Ch.* 417, 423.

The defendants have since answered, and they now resist the complainant's demand for an account upon two grounds: first, that his laches bars his demand, and, second, that there is nothing due to him from them.

Great delay is a great bar in equity. 1 *Story's Eq. Juris.* § 529; *Fonbl., Book* 1, § 27; *Chalmer* v. *Bradley*, 1 *Jac. & W.* 51, 62; *Ray* v. *Bogart*, 2 *Johns. Cas.* 432; *Piatt* v. *Vattier*, 9 *Pet.* 405, 416. More than one hundred years ago Lord Camden said: " A court of equity will always refuse its aid to a stale demand, when the party has slept upon his rights, or acquiesced for a great length of time. Nothing will call forth the activity of a court of equity but conscience, good faith and reasonable diligence." *Smith* v. *Clay*, 3 *Bro. C. C.* 640, *note.* A court of equity will not permit accounts to be overhauled in favor of a party who has slept upon his rights, without just cause, for a great number of years; and more especially as against the representatives of a party who may be supposed to have had the means of defence in his life-time, but who may have left his successors without the requisite vouchers. *Mooers* v. *White*, 6 *Johns. Ch.* 360, 368. The court is always unwilling to decree an account when the transactions have become obscure and entangled by delay. *Rayner* v.

Stout *v.* Seabrook's executors.

*Pearsall,* 3 *Johns. Ch.* 578, 585. The justice of this doctrine is obvious. He who delays asserting his rights until the proof in vindication of them is so indeterminate that it is very difficult to decide whether what seems to be justice to him is not injustice to his adversary, ought to lose all right to the aid of a court of conscience, for, by his laches, the path of justice has become so obscure that it cannot be traced with certainty. The law assists those who are vigilant, not those who sleep upon their rights.

No inflexible rule can be prescribed as to the lapse of what period shall disentitle a suitor to an account. The court may refuse to decree an account even when an action is not barred by the statute. Judge Story says : " In matters of account, although not barred by the statute of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy " (1 *Story's Eq. Juris.* § 529), and Lord Eldon, in *Foster* v. *Hodgson,* 19 *Ves.* 179, 185, said : " If there has been that delay or forbearance that makes it not illegal, but inequitable, to demand an account, this court will deny it, and send the plaintiff away without relief." Each case must be controlled by its own peculiar circumstances, but I think it may be laid down as a safe general rule that a decree for an account should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence or other cause.

Tested by this rule, it is manifest the complainant has no case. He does not demand an account until his delay has put him in the best possible position, and his adversary in the worst. He seeks to turn his faults into an advantage. It is not until the tongue of the person who had the most perfect knowledge of all the transactions of which an account is sought, is silenced by death, and the memory of all others who ever knew anything about them is obscured by the lapse of time, and very important written evidence, bearing strongly, most probably, in refutation of his claim, is lost,

that he asks that an account shall be rendered to him. Why, the very first step which it is necessary to take in decreeing an account, shows how utterly impossible it is for the court to do anything like complete justice.

What sum did the firm owe Mr. Seabrook at the dissolution? This question must be answered at the very threshold of the investigation. The defendants have put in evidence a written acknowledgment by Mr. Walling, showing that, on April 1st, 1856, it was $9,188.22, and also a mortgage made by Mr. Walling to the firm, for $900, bearing date February 19th, 1858. And the complainant points to four entries in a book belonging to Mr. Seabrook, by which it appears the balances due to him from the firm were as follows : April 1st, 1858, $5,831.13; January 1st, 1859, $4,293.83; January 1st, 1860, $3,171.65, and January 1st, 1861, $2,612.49. No subsequent entry appears. Mr. Walling is utterly unable to explain how the $9,188.22, due April 1st, 1856, was cut down to $5,831.13 on April 1st, 1858. He does not pretend that the sum he acknowledged due to Mr. Seabrook April 1st, 1856, was not just and true, nor that it was reduced by profits made between April 1st, 1856, and April 1st, 1858, nor that any of the firm property was sold to Mr. Seabrook, during that period, in payment of his claim. It may be that the stock of merchandise, the four mortgages held by the firm, and all the other assets which the complainant now insists shall be added to the debit side of the account, were applied in reduction of the $9,188.22 due April 1st, 1856, and it was thus reduced to $5.831.13. That course, under the circumstances, would have been natural and business-like. To say that it was pursued, would be conjecture, but that is the best foundation which any judgment in this case can have. The remote period at which this investigation must start, the death of Mr. Seabrook, the loss of evidence and the faded condition of all recollection after the lapse of so many years, leave the court without means of ascertaining the truth, and consequently without the ability

to do complete justice. For this reason I am of opinion the complainant must be dismissed.

My judgment on the other ground is also with the defendants. So far as it is possible to deduce any satisfactory conclusion from the material in hand, I am of opinion enough has not been received from the assets of the firm to pay the debt due to Mr. Seabrook. I believe an account stated according to any series of rational conjectures, where resort must be had to conjecture for the want of evidence, will show a balance against the firm. If, in an action for an account, the court is satisfied nothing is due to the complainant from the defendant, no further proceedings will be permitted, but the bill will be dismissed. *Campbell* v. *Campbell*, 4 *Hal. Ch.* 738. The defendants are entitled to a dismissal, with costs.

The complainant has been examined as a witness regardless of the defendant's objection to his competency. His suit is against the defendants in their representative capacity, and the statute, therefore, seals his mouth. His testimony must be cast out.