# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### NOVEMBER TERM, 1919.

JOSEPH F. McGANN, complainant-appellant,

*v.*

LA BRECQUE COMPANY, INCORPORATED, defendant-respondent.

[Decided March 1st, 1920.]

The court of chancery has no jurisdiction to enjoin summary proceedings by a landlord to dispossess a tenant where no equitable right is involved.

On appeal from a decree advised by Vice-Chancellor Lane, reported in *90 N. J. Eq. 526.*

*Mr. Milton M. Unger,* for the complainant-appellant.

*Mr. D. Frederick Burnett,* for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

The learned vice-chancellor, after holding that the court of chancery had jurisdiction, struck out the bill on the merits in a summary way, on motion. This, appellant argues, seems incongruous, but we need not consider the point since the same result must be reached on the defendant's objection to the jurisdiction of the court.

The bill was to enjoin the enforcement of possession after a judgment in favor of the defendant, the landlord, against the complainant, the tenant, by summary proceedings to dispossess after the end of the term. The vice-chancellor correctly held that no equitable right was involved. He bases his jurisdiction wholly upon the inadequacy of the remedy at law, and since the correctness of the present judgment for possession is not disputed, the jurisdiction of the court of chancery cannot be sustained on any peculiar fact of this case but must rest on the view that speaking generally, without regard to the facts of the particular case, the remedy at law must be inadequate. The remedy is by action of trespass, exactly the remedy that has existed in English law for centuries, certainly from the time of Henry III. When the legislature in 1847 enacted the statute providing for summary proceedings by a landlord to obtain possession of his property, its evident object was to settle speedily the right to the immediate possession by a judicial proceeding and thereby avoid actual physical conflict the occurrence of which had made necessary the statutes relating to forcible entry and detainer. *Fry* v. *Myers, 56 N. J. Law 115.* But the legislature recognized that the landlord might be in the wrong and therefore took away from the judgment of dispossession all semblance of a determination of the ultimate right as distinguished from the immediate possession by enacting that the landlord shall remain liable in an action of trespass for any unlawful proceedings under the act. *P. L. 1847 p. 142.* This is re-enacted in section 113 of the District Court act (*Comp. Stat. p. 1990 § 113*) and in section 7 of the act of 1903. *Comp. Stat. p. 3074 pl. 18g.* The use of the word "remain" is

a clear proof that' it was the old common law action of trespass that was preserved, and not a new remedy that was provided for the first time. We can hardly believe that the learned vice-chancellor meant at this late date to decry the most characteristic action of the common law, of which trover and assumpsit were mere developments, and to hold that a jury could not assess adequate damages in an action of tort. If he meant to hold that, he in effect held that in any case triable by jury, the court of chancery might intervene by injunction and draw the case into its jurisdiction whenever the chancellor thought that a jury would not rise to his notion of adequate damages. We are at a loss to know what criterion of adequacy could .be suggested. The amount involved is of no consequence since it is the glory of the law to treat cases where the amount is small with the same careful consideration as cases involving millions. The poor man who may be ejected from his apartments may suffer damage as serious to him as the loss suffered by the present plaintiff in losing the good will which he has built up under a lease terminable on six months' notice. The injury to both may be determined by a jury if the ejection is unlawful. Unliquidated damages must be assessed by a jury, and it is only in cases involving some special feature that the court of chancery ever undertakes the task. *Palys* v. *Jewett, 32 N. J. Eq. 302; Trotter* v. *Heckscher, 40 N. J. Eq. 612, 656; Alpaugh* v. *Wood, 45 N. J. Eq. 153, 157; Norton* v. *Sinkhorn, 63 N. J. Eq. 313; Sparks Manufacturing Co.* v. *Town of Newton, 57 N. J. Eq. 367, 393.* The jury may err by either too large or too small a verdict, but we must not assume in advance that it will err. We must assume it will do right.

If the vice-chancellor meant to assert jurisdiction because in an action of trespass the damages might be assessed by a jury at an amount he considered inadequate, we should have constitutional difficulties. When our constitution was adopted in 1844, the right to trial by jury in an action of trespass existed as it had existed for centuries. That right was made inviolate ·without limitation as to the method of attempted violation, whether by legislative act or judicial decision, and we venture to say that the court of chancery had never attempted to inter-

fere by injunction with an action for trespass to land. It was probably because of this constitutional provision that the legislature enacted especially that the landlord should remain liable in an action of trespass for any unlawful proceedings under the act. This secured the tenant the vindication of his rights by the verdict of a jury, but it secured also the rights of the landlord. If the verdict of a jury might be less than the tenant thought just, the landlord was entitled to the benefit of the jury's judgment. We are led to express these views not because we think the learned vice-chancellor ignored for a moment principles so fundamental and elementary, but because of the unfortunate scope of his remark that the court of chancery has jurisdiction in all cases in which the remedy is inadequate whether involving the right of possession to real estate or not. There are cases where the jurisdiction of chancery may be sustained on the ground of irreparable injury. The question is dealt with by the late Vice-Chancellor Emery with his usual care in *Public Service Corporation* v. *Westfield, 82 N. J. Eq. 43; affirmed, 82 N. J. Eq. 662.* Some are cases of preliminary injunction where it is only sought to preserve the property pending proceedings in courts of law to determine the legal right, and some are cases where objections to the jurisdiction of chancery are waived, but after all deductions, cases do remain which sustain the jurisdiction to determine the legal right on final hearing in cases of irreparable injury. Inadequate damage and irreparable injury are not synonymous. All injury, in a sense, is irreparable, but where the only possible compensation is pecuniary there is no reason to hold the damage irreparable. However great the complainant's loss may be in this case, whether it is ascertained by a jury or by a vice-chancellor, it must be pecuniary, unless an equitable right is involved, and, as the vice-chancellor held, none is involved here. The vice-chancellor attempts to extend his jurisdiction to cases where there is no equitable right involved merely because he fears the verdict of a jury may be too small. He trusts the ascertainment of damages to an equity judge, where the law for centuries, and the legislature recently by plain enactment, has entrusted it to a jury. Not only is the provision for ascertaining the damages

the time honored method of the common law, but it has the approval of the legislature. When they enacted the statute and afterward whenever they re-enacted it, they thought the rights of the defendant were sufficiently protected by the action of trespass; they expressly took away any right of review by appeal or by *certiorari* and expressly reserved the action of trespass. It is not for the courts to assert a different remedy where the legislature has made the remedy by action of trespass exclusive. There are no special circumstances in this case which would legally limit the jury in an award of damages.

It was within the power of the legislature to enact that damages should be ascertained in an action of trespass. Nothing in our constitution suggests a constitutional right of appeal except from the orphans court and circuit courts. *Const.* § 4, *3,* and § *5, 3.* It is within the power of the legislature to alter or regulate appeals. *Ex parte McCardle, 7 Wall. 506; State Coun. Jr. O. U. A. M.* v. *Nat. Coun. Jr. O. U. A. M., 79 N. J. Eq. 193; Terwilliger* v. *Browning, 207 N. Y. 479; 101 N. E. Rep. 463,* or to make the decision of the court of first instance final. This is so even in the case of administrative bodies and officers. It is enough to cite *Murray's Lessee* v. *Hoboken Land and Improvement Co., 18 How. 272; U. S.* v. *Ju Toy, 198 U. S. 253. A fortiori,* the legislature need not provide for an appeal from a judicial tribunal as in the case of proceedings to dispossess a tenant. As was said by Mr. Justice Brewer in *Pittsburg Railway, &c.,* v. *Backus, 154 U. S. 421, 427:* "If a single hearing is not due process, doubling it will not make it so."

Let the decree be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.

*For reversal*—None.