On December 8th, 1919, Philip and Newton Bornstein leased to Carl Worman the store building 47 Market street, Newark, for ten years, from January 1st, 1920. The lease contains a covenant that the lessee "will not re-let or under-let the said premises, or any part thereof, nor assign this lease, without the written consent of" the lessors, and the right of re-entry was reserved upon default in any of the covenants. Four days later Worman incorporated the Lincoln Furniture Company, of which he held seventy-five per cent. of the capital stock; was its president, and since its inception the company has carried on the retail furniture business in the premises. All during his incumbency the monthly rental was paid by the company's checks, all signed by Worman as president and by the treasurer, except three, which were signed by the treasurer alone. Worman sold his interest in the company in February or March, 1924, to one Block, and quit the business. He assigned the lease to the company February 29th, 1924, by an assignment which recites that it was confirmatory of a previous assignment dated December 15th, 1919. Upon learning of Worman's withdrawal the defendants, the owners, rejected the company's check for the April (1924) rent, signed by or for the new management, *Page 80 
gave notice to Worman of the forfeiture and termination of the lease because of the assignment, and brought suit in the district court to dispossess him for breach of the covenant. The company, in danger of being ousted, filed this bill to restrain the suit on the ground that the defendants, with notice of the assignment, acquiesced in its possession, and, by accepting the monthly rental from the company, had waived the breach of the covenant. An injunction pendente lite was ordered.
The defendants' objection that equity is without jurisdiction because of the defense of waiver is available at law is not substantial. The complainant is not a party to the summary proceeding, and, although the victim of the threatened judgment of eviction, cannot be heard to assert its rights, and a warrant of removal against its assignor will carry with it as well the dispossession of the company. Brahn v. Jersey City Forge Co.,38 N.J. Law 74; Township of Union v. Bayliss, 40 N.J. Law 60.
Its only redress would be by action for damages. McGann v.LaBrecque, 91 N.J. Eq. 307. This predicament does not constitute a ground for equity interference with the statutory remedy of the landlord, to which the complainant's possession is subordinate, but its succession to the lease entitles it to appeal for equitable relief from forfeiture upon a waiver of the breach of the covenant. That a waiver is an available defense at law is settled law. North v. Jersey Knitting Mills,98 N.J. Law 157. But the relief rests purely on equitable doctrine, and was originally granted by the chancellor alone and later adopted by the courts of law. The inherent jurisdiction of courts of equity to relieve against forfeiture, as in case of waiver for breach of covenant, is too well established to need extended citation of authority. Pom. Eq. Jur. § 454. However, when the defense may be pleaded at law, and adjudicated according to the course of the common law, equity courts refrain from exercising its jurisdiction. But it is not called upon to stay its arm when the proceedings at law are summary and the defense precarious. The discussion of this point in Windholz v. Burke, 98 N.J. Eq. 471,
is repeated: "Furthermore, if the district court *Page 81 
has jurisdiction, and erroneously should refuse to entertain or uphold the defense of waiver, or any other valid defense, its judgment would be final, the complainant's possession would be lost to it, and its only remedy would be a suit for damages for unlawful ouster. McGann v. LaBrecque Co., supra. The proceedings are summary; there is no appeal on the merits, and, on certiorari, the only reviewable question is, had the court below jurisdiction? Cases in 4 Park Dig. 7917. The relief the complainant presently stands in need of is the protection of its possession, not damages, and while the law may grant compensating damages for the injury now threatened, equity prevents the infliction of the injury altogether. It is obvious that the defense at law is not complete and adequate. Equity will not refuse to interpose when the remedy is more nearly complete and perfect in equity than at law." Henwood v. Jarvis Schafer,27 N.J. Eq. 247.
The alleged waiver is pleaded to the breach of the covenant not to assign the lease; there was no re-letting or under-letting. To maintain the bill the complainant must satisfactorily establish that the defendants, with knowledge of the assignment, accepted the rent from the assignee. It is an uncontroverted fact that the defendants did not have knowledge of the assignment until after the company's last check for the April (1924) rent was received and rejected, but the contention is that they had notice of facts and circumstances from which knowledge of the assignment is imputed as a matter of law. The claim is, in substance, that the defendants were forewarned that the lease was to be assigned, that they tacitly consented that it should be assigned, and, accordingly, accepted payment of the rent for the assignee. It appears that during the negotiations for the lease, which were conducted by Worman and his New York lawyer, Zodikow, and the Bornsteins and their lawyer, Myers, it was made known that Worman, being in the wholesale furniture business, regarded it as unwise for commercial reasons, to engage in the retail trade under his own name, and that the Bornsteins, upon the advice of Myers, refused to make a lease to a corporation, because of unfortunate experiences, and *Page 82 
would lease only to Worman. In spite of this determination of the Bornsteins, Zodikow says he announced that a corporation would be formed to conduct the business; that it would take over the lease and would be the tenant, and so that there should be no uncertainty as to the company's status in the future he would pay the first month's rent by the company's check, and, that he opined that under such circumstances, according to the laws of New York, "there could never be any question raised with respect to the covenant against assignment;" to which he says Myers replied that he saw no objection so long as Worman remained responsible on the lease. Worman told substantially the same story. Zodikow would not say, though pressed for an explicit answer, that it was stated the lease was to be assigned, nor did Worman; in fact, both admit that, though it was urged by them, the Bornsteins refused to give their written consent to an assignment to the company. Their testimony was fully met by the circumstantial denials of both the Bornsteins and Myers. It is highly improbable that, having insisted upon the covenant against assignment, and having refused to waive it, the Bornsteins entered into an arrangement to defeat it. Zodikow's recital, it would seem, is an echo of his secret contrivance and design to circumvent the covenant. That he disclosed his scheme to the defendants and their counsel, and forewarned them that he intended to render the integrity of the covenant ineffective is incredible, and it is not accepted.
For a week before the company organized (December 15th, 1919), Worman, who had purchased the stock of furniture of the previous tenant, carried on the business under the trade name of the Lincoln Furniture Company. The minutes of the company show that upon its formation the directors confirmed a resolution of the stockholders to accept Worman's offer to sell to the company the merchandise and the lease for a fixed issue of capital stock. From that time on the business was carried on in the name of the corporation, its corporate name being conspicuously displayed on the building, show windows, delivery wagons, in advertisements and upon its *Page 83 
stationery, including checks. The defendants knew, of course, that the business was being conducted in the name of the Lincoln Furniture Company; they had seen the outward expressions and had letter communications from and with the concern, and had received the checks bearing the signature of its president and treasurer with the imprint of their offices, but both assert that these indications of corporate personality did not suggest their true character. It is not inconsistent with this attitude that the name of the Lincoln Furniture Company did not signify corporate existence, in view of the common practice of individuals trading under such captions, but it is odd that they did not sense the significance of the official signatures on the checks. However, it appears they were indifferent while Worman was connected with the store, and did not concern themselves whether he, as lessee, was conducting the business personally under a trade-name or through a corporation. Either way was not dissatisfactory so long as he was in charge, and no inquiry was made until they discovered that he had sold out to Block, and then they were not informed and were not sure until after they had given notice of the forfeiture and termination that the assignment had been made, for, even at the time of service of the notice, Worman denied that it had been executed.
Occupation of the store and carrying on the business of the corporation would of itself amount to an assignment of the lease, and a forfeiture; but acceptance of the rent from the company would not effect a waiver unless the defendants accepted the rent with knowledge of the existence of the corporation and of its exclusive occupancy. It is a fact beyond serious question that the defendants had no knowledge of the incorporation, and none of Worman's offer to sell and the company's resolution to purchase the business, including the lease. The display of corporate activities was no doubt sufficient to put them on notice, but such notice is not knowledge, and they were under no legal duty to inquire into and be informed of the facts, and it is inferable that had they inquired of the interested parties they would not have been told the truth. It was their privilege to rely in confidence on Worman's covenant *Page 84 
not to assign his lease, and neither he nor the company, for obvious reasons, ventured to dispel their faith by a disclosure of the facts. It would have been a simple thing to do had they been frank, and safer than the gestures which the defendants interpreted entirely consistent with their theory, that Worman was in possession and operating the business under a trade-name or through the medium of a company. Waiver is the intentional relinquishment of a known right. "To constitute a waiver the lessor at the time of the receipt of rent must have had knowledge of the existence of the cause of forfeiture. Thus, forfeiture for a breach of a condition not to assign is not waived by acceptance of rent from the assignee, unless the landlord has knowledge of the assignment." 16 R.C.L. 1135; German-American Savings Bank
v. Gollmer, 155 Cal. 683; 24 L.R.A. (N.S.) 1066; Drummond
v. Fisher, 18 N.Y. Supp. 142; Emery v. Hill, 39 Atl. Rep. 266;West Shore Railroad Co. v. Wenner, 70 N.J. Law 233; Decker v.Hartshorn, 60 N.J. Law 548.
It is doubtful that a formal assignment of the lease was executed before the so-called confirmatory assignment of February 29th, 1924, which was given to clear the record for the sale of Worman's stock holdings in the company to Block. Zodikow's scheme, as he says he outlined to the defendants, was not to breach the covenant by assigning the lease to the company when formed, but to have the company take it over in possession and to effect a waiver by paying the first month's rent on January 1st, 1924, with the company's check. With this undisclosed plan in mind, and obviously sensible of the penalty of assigning the lease on the heels of the covenant not to assign, it does not seem plausible that the lessee or his attorney took the chance of discovery and the risk of forforfeiture. The attorney's safer manipulation, which he undoubtedly pursued, was to have the company carry on the business under Worman's management, neither re-let or under-let, nor assign the lease, and by assuming an equivocal occupancy they better ward off both charge and proof of forfeiture, and it would appear that not until it became expedient to Worman's sale was the so-called confirmatory assignment made. *Page 85 
Although forfeitures are not looked upon with favor, relief cannot be granted unless the waiver is satisfactorily established, and, as the evidence does not measure up to the legal requirements, the bill will be dismissed.