The complainants show that on November 16th, 1929, a written agreement was entered into between the defendant, J. Frank Finn, who was party of the first part thereto, and the complainants, James P. Hall and Barry L. Balch, who were parties of the second part thereto, and Charles Zerman, who is not a party to this suit, was party of the third part thereto. That part of it pertinent to this case, provides as follows:
"1. That the party of the first part holds a mortgage dated April 8th, 1929, in the principal sum of $154,760, made by the Modern Theatre Company, covering premises in the Town of West New York, which mortgage is recorded in the Hudson County Register's *Page 36 
Office in Book 1664 of Mortgages, page 410, for said County, in trust for the use and benefit of himself and the parties of the second part; the party of the first part, however, to be first paid out of the proceeds realized from the said mortgage, the sum of $94,600 with interest, and the balance to be paid to the parties of the second part.
"2. That in the event that the mortgaged premises are sold under foreclosure proceedings now pending, the party of the first part will protect the interests of the parties of the second part by bidding up to the amount due on said mortgage, if necessary.
"3. That in the event that title to the said mortgaged premises is acquired by the party of the first part, the party of the first part agrees, if required by the parties of the second part, to convey the said premises to them, upon payment of the sum of $94,600 and interest; otherwise that the said premises may be sold by the party of the first part for the highest and best price obtainable and that the proceeds thereof, over and above the said sum of $94,600 and interest be paid to the parties of the second part.
"4. That the parties of the second part agree to secure releases of mechanics liens against the premises 250 Harrison Avenue, Jersey City, New Jersey, from Rovegno-Hall Company and Oakland Lumber Company."
On November 16th, 1929, Finn filed a bill to foreclose the above mortgage, and at the foreclosure sale which followed, on March 4th, 1930, purchased the premises for the sum of $145,000.
On July 11th, 1929, Zerman assigned his interest in the mortgage to the complainants James P. Hall and Barry L. Balch subject to Finn's claim of $94,600. Hall acted for and in the interest of Rovegno-Hall Company, and Balch for the Oakland Lumber Company.
On August 8th, 1929, the Oakland Lumber Company assigned its interest in the mortgage to the West Bergen Trust Company, one of the complainants.
Balch and Hall secured a release of the mechanics' lien claims referred to in the agreement, and they allege they have performed their part of the agreement.
Complainants seek an accounting from Finn, and an order decreeing "that the sale of the mortgaged premises * * * to Finn for the sum of $145,000, fixed and determined the value of the premises and obligated Finn to pay complainants the difference between said purchase price and Finn's interest of $94,600 in the said mortgage." *Page 37 
They assert in the bill that they "did not and do not desire to exercise the option given them by paragraph 3 of the aforesaid agreement" and allege that they "have elected and do elect to hold the said J. Frank Finn as their trustee to account to them for the value of the property as fixed by the sale to him and for the proceeds of such sale as fixed by the terms and conditions thereof."
When Finn acquired the title, as aforesaid, there was an unfinished structure upon the land. This he had completed, and it was afterwards rented or leased. He denies that said sale "fixed and determined the value of the premises" and says he is not obliged to pay complainants the difference between the sum due him under the mortgage, and the price he paid for the premises, as they allege, and he counters with an offer to convey the premises to them if they will satisfy his claim of $94,600, plus interest and such expenditures as he was forced to make in order to fit the building for the accomdation of tenants.
There is little or no dispute about the facts. Finn bought the premises pursuant to the agreement, nobody contends to the contrary. The agreement permitted him "to bid up to the amount due on said mortgage." He agreed "if required by the parties of the second part, to convey the said premises to them upon payment of the sum of $94,600 and interest; otherwise, that the said premises may (italics mine) be sold by the party of the first part for the highest and best price obtainable, and that the proceeds thereof, over and above the said sum of $94,600 and interest be paid to the parties of the second part." He was willing to convey the premises upon the acknowledged terms and makes such offer in his answer. The complainants admit they "did not" request him to convey to them; and they expressly waive a conveyance. He has not sold the premises as he is authorized to do under the agreement, and out of the price obtained deduct his claim; no time limit within which he "may" sell is fixed by the instrument. The agreement does not say he "shall" sell, but"may" sell. The complainants demand what the agreement gives them no title to exact: an accounting. They may, *Page 38 
under certain conditions acquire the premises, but no provision of the agreement comprehends an account.
The parties themselves fixed and determined their rights, when they appended their signatures to the undisputed agreement. That agreement is not elastic; it is decisive. The rights of the parties to it still are what they then and there declared them to be: nothing more; nothing less. Equity has no power to change, alter, amend or vary the terms of that, their, instrument, which is essentially legal and conceded to plainly and certainly express the views and ideas of its authors or makers. Equity cannot make an agreement for them, nor can it substitute their agreement with another; it cannot read into it, a plan not contemplated by the parties to it. Each party to the agreement evidenced his approval and consent to it with his signature. That approval or consent is an act of reason accompanied with deliberation, the mind weighing as in a balance, the good and evil on each side; and equity assumes when competent and informed men state it, they mean just what they say.
The complainants say, since Finn acquired the title to the premises, he has exercised absolute control over it. That is true, but they have acquiesced in such control. They have elected to hold him as their trustee to account to them for the value of the property as fixed by the sale. By what authority, I fail to discover. What part of the agreement accords them that privilege? No part of it even suggests such an inference. It was not calculated, nor intended, that the foreclosure sale bid would establish the value of the premises. Finn, aside from protecting his own investment, accommodated the others. He unquestionably had a right to manage and control the property for the purpose of keeping it in a tenantable condition; he had invested heavily in it; he had the unfinished structure completed; he paid the taxes and insurance premiums charged against it; all of this he did, not only for his own benefit, as before noted, but for the benefit of the complainants as well. He sought no gain; he has shouldered the burden throughout. The complainants, in effect, stood passive and aloof, while Finn fulfilled his expressed *Page 39 
obligations under the contract; they knew what he was doing and raised no voice of protest; then when his efforts made the premises physically and financially attractive without cost or labor to them, they come to life and demand a share in the fruits of accomplishment, without having borne any of the burden; equity, therefore, will not permit them to add to his obligations when such action is not warranted by the letter, or the spirit of the agreement. In my opinion, Finn throughout has acted equitably and just towards the complainants. He has set an admirable example of fairness well worthy of emulation. Complainants seek equity but show no inclination to extend it. Finn "may" yet sell the premises, because "time" is not of the essence."
The bid of Finn to acquire the title was made in accordance with an agreed purpose. That purpose cannot be distorted, or converted, into something not contemplated by the parties in their agreement. Complainants have expressly renounced their right to ask for a conveyance and pray for relief not warranted by the agreement. Finn has in all respects complied with the terms of the agreement; to grant complainants' prayer, in effect, would be to penalize the good conscience exhibited by the defendant. The court, under the circumstances, has no alternative but to grant the application of the defendant and dismiss the bill of complaint.
I shall advise a decree to this effect. *Page 40