Complainant, as assignee of Integrity Corporation of New Jersey, filed her bill praying relief from provisions contained in two written contracts executed by her assignor and The Township of Haddon, in the County of Camden, a municipal corporation, limiting refunds to a period of ten years on money deposited to secure the installation of water mains in a new real estate development. The contracts are dated, *Page 396 
respectively, September 14th, 1926, and October 5th, 1926; they provide for extension of mains to and along certain projected streets in a tract of land then proposed to be developed as "Haddonleigh" by the Integrity Corporation; the municipality owned and operated its water plant and water supply system. The contracts required Integrity Corporation to make substantial deposits of money with the municipality and contained provisions for a refund to the corporation of $50 per unit as and when new dwellings were erected, occupied, and connected with the water mains. The contracts contained identical paragraphs reading: "This agreement shall continue in force for a period of ten years from its date and any portion of said deposit to which said Integrity Corporation of New Jersey is not entitled to refund under the above schedule within said period of ten years will be forfeited to said Township of Haddon."
Complainant was certainly not diligent in presenting her asserted causes of action to this court. Her bill was not filed herein until eighteen years after the alleged (but controverted) occurrences upon which she relies to establish a special equity in her favor, and she did not suggest a claim based on those alleged happenings until she amended her bill, six months later. "Great delay is a great bar in equity." Stout v. Seabrook'sExecutors (Court of Chancery), 30 N.J. Eq. 187, 190.
Especially so when, as here, the person seeking the intervention of this court charges no fraud and offers no excuse for the delay, and a complete defense has been rendered difficult or impossible because of the death or the natural forgetfulness of witnesses.
Complainant, in her original bill, invoked the aid of equity against what she alleged to be an unjust forfeiture resulting from the expiration of the time fixed by the contracts for possible refunds. If granted this relief, she prayed an accounting from the municipality to show what dwellings have been erected, occupied, and connected with the water mains laid under the contracts. She also asked that the forfeiture clauses in the two contracts be adjudged void as against her claim to future payments when dwellings are erected, occupied, and connected to the water mains. Complainant *Page 397 
amended her bill September 7th, 1944, to amplify her claim to relief. She then, and for the first time, asserted that Integrity Corporation relied upon representations of officers and agents of the municipality that sewer pipes would be laid through the lands to be developed and connected to the defendant's sewage disposal plant, and that sewer service would be made available as and when new dwellings were erected. It is important to note that the contracts signed by the parties had no relation to the laying of sewer pipes or the rendering of sewer service. Complainant also charged that, although sewer pipes were laid by the defendant in the proposed streets, they were not connected to the disposal plant and sewage service has never been made available within the Integrity tract. She declared that, for this reason, building lots could not be sold, the development collapsed, the mortgage on the land was foreclosed, and it became impossible for Integrity Corporation or for her to secure the return of moneys paid by it to the township.
The defendant municipality admits the execution of the two contracts, receipt of the stipulated payments, the erection of some dwellings on the Integrity tract, and municipal ownership of the water and sewage systems serving the township. It declares that to extend its water mains to Haddonleigh, and to there install water mains, fire hydrants, hub ends, gate valves and boxes it expended a much greater sum than that deposited with it by the Integrity Corporation. It denies that any representations were made to Integrity Corporation by it or any of its officers that sewage service would be available when new dwellings were built and occupied; it denies generally the allegations of the amended bill and it advances a number of affirmative defenses, including that of laches.
Complainant does not now contend that the representations she claims were made by the solicitor of the defendant municipality were legally binding upon it. The point she would make is that Integrity Corporation was justified in relying and acting upon the alleged representation that sewage service would be available when dwellings were built and were ready for occupancy; that, without fault on its or her part the *Page 398 
sewer pipes laid by the defendant in the streets of Haddonleigh were not connected with the disposal plant and, as a consequence, it became impossible to sell lots and to recover moneys paid to the township. To support this contention, complainant relied solely upon the testimony of her husband Harold Paul Fox.
It is true, as the complainant argues, that forfeitures and unjust enrichment are regarded with disfavor in equity; but, it is equally true that the law permits men to make contracts which will result in forfeitures or a waiver of the return of money or property and, when no special equity calling for relief is established and it is clear from the terms of the contract that the parties have so agreed, a court of equity will not interfere to substitute a different and more liberal agreement. It is not to be supposed that a court of equity will lightly invalidate unambiguous contracts made between competent parties and substitute therefor other agreements in accord with variable rules of right and conscience. And one who might otherwise be relieved of a forfeiture, may by his own conduct forfeit his right to be heard — so, it has been declared that, "In applications for relief from forfeitures, the rule of laches ought to be rigidly applied." Pom. Eq. Jur. (5th ed.), §452.
"If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any advantages they might have had if the claim had been reasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief but will remain passive; * * *." Pom. Eq. Rem., § 21. This statement, apt to the present case, is but a special application of the equitable maxims that, "He who seeks equity must do equity," and "He who comes into equity must come with clean hands." In Lutjen v. Lutjen, 64 N.J. Eq. 773;53 Atl. Rep. 625, our Court of Errors and Appeals said: "Lapse of time alone is deemed by the authorities to be a sufficient ground of estoppel in *Page 399 
cases like the present, when the court cannot feel confident of its ability to ascertain the truth now as well as it could when the subject for investigation was recent and before the memories of those who had knowledge of the material facts have become faded and weakened by time. To constitute estoppel of this description it is not essential that any actual loss of testimony, through death or otherwise, or means of proof, or changed relations, to the prejudice of the other party, should have occurred. But the estoppel arises because the court cannot, after so great a lapse of time, rely upon the memory of witnesses to reproduce the details that entered into the final execution of the instrument of settlement." And, in Stout v. Seabrook'sExecutors, supra, Vice-Chancellor Van Fleet declared: "The justice of this doctrine is obvious. He who delays asserting his rights until the proof in vindication of them is so indeterminate that it is very difficult to decide whether what seems to be justice to him is not injustice to his adversary, ought to lose all right to the aid of a court of conscience, for, by his laches, the path of justice has become so obscure that it cannot be traced with certainty. The law assists those who are vigilant, not those who sleep upon their rights."
In the light of these pronouncements, let us examine the evidence. When Integrity Corporation took over its tract for development in 1925 there were already four houses there, privately owned and occupied by their owners. There was then no sewer service available on the tract. The money paid by Integrity Corporation to the township was mortgage money. With money from the same source, Integrity Corporation also began the construction of several dwellings; no sewage service had then been made available and no condemnation proceedings had been begun to obtain a right to run a sewer main through privately owned lands to the sewage disposal plant. When the new dwellings were completed, Mr. Fox testified, it was necessary to install septic tanks. These proved troublesome, he said, and none of the houses were sold. However, no claim of representations or misrepresentations as to sewer service seems to have been made to the township. *Page 400 
Complainant took her assignment of rights under the contracts December 17th, 1928. Four months later the corporation holding the mortgage or mortgages on the Integrity lands instituted a foreclosure suit and, on September 4th, 1930, a sale was had. Still complainant did not bring suit. Then, in 1940, Harold Paul Fox, for his wife the complainant, entered into negotiations with the township looking to a conveyance by her of any interest she might have in the lands formerly owned by the Integrity Corporation in lieu of possible foreclosure of tax titles. Even then no claim was made by complainant or on her behalf with respect to the deposited moneys or failure to give sewage service to Haddonleigh. But, testified Mr. Fox: "We had this suit in mind for the last five years." Why then was it not instituted; why, when it was instituted, was not the claim advanced which is now complainant's main hope of relief?
Mr. Fox testified that, in several instances, the chairman of the township committee, a Mr. Whittaker, was present when Mr. Keown, the then township solicitor, promised sewer service to the Integrity tract. Before this cause was instituted Mr. Whittaker died. Mr. Keown, called as a witness by the defendant and asked to affirm or deny statements made by Mr. Fox, was at a great disadvantage. He is no longer solicitor for the township and most certainly endeavored to recollect and truthfully detail circumstances and conversations of eighteen years past, but very naturally found himself substituting probabilities and conclusions for remembered facts. In this posture of the case I would be warranted in advising, upon precedent, that complainant be denied any relief on her second stated cause of action. Fortunately, however, there is sufficient definite evidence persuasive to a conclusion of fact. Mr. Keown positively declared that he had not promised Mr. Fox, as the latter had testified, that the Haddonleigh sewer pipes would be connected to the sewage disposal plant through the VanSciver farm. Mr. Keown had no authority to negotiate with Mr. VanSciver, had had no contact with him, and had never thought that a connection would be made through those lands. Mr. Keown was also certain that he never discussed the subject of a sewer connection *Page 401 
with Mr. Fox in the presence of Mr. Whittaker or in the presence of the three representatives of the mortgagee Mr. Fox had testified were with him in Mr. Keown's office. Mr. Keown was positive that he "never knew of any outside interest, financial, or otherwise, associated with Mr. Fox in this development."
Mr. Fox named the three associates he declared participated with him in the negotiations with Mr. Keown; they were financially interested in the development of Haddonleigh. Complainant had assumed the burden of proof, but not one of these individuals was produced by her to corroborate the testimony of her husband, and no reason was advanced by her to explain this failure. I am convinced by the evidence, and I find, that the representations alleged to have been made by Mr. Keown to Mr. Fox that the sewer connection would be made and sewer service would be available in the Integrity tract when dwellings to be erected were completed, were not, in fact, made. Relief will be denied to complainant on her second stated cause of action.
I first discussed and disposed of the question raised by complainant's second cause of action because it involved a claim of special equity and the resolution of a fact question. Much of what I have said, however, applies with equal force to complainant's first stated cause of action and her prayer for relief from forfeiture and against the unjust enrichment of the defendant municipality. Technically, the use of the word forfeiture as complainant employs it, is inapt to the present case. "The word `forfeit' has a well-established meaning in the law. `To forfeit' is `to divest or to suffer divesture of property without compensation in consequence of a default or offense; also to pay money as a mulct, or for a default or wrong.'" And. Law Dict. The parties to the contracts before the court did not make a forfeiture of the moneys deposited depend upon a default or offense. Rather, they conceived of a waiver of further refunds at the end of ten years. Complainant's assignor agreed to make the deposits with the township; the township agreed to install water mains and to refund $50 when a new dwelling was connected therewith, but stipulated that the total refunded should never *Page 402 
exceed the amount deposited and that refunds would only be made during a period of ten years after execution of the contracts. The township installed the pipes agreed to be laid and made all the refunds called for by the contracts. Refunds automatically ceased when Integrity Corporation failed to sell any of its new dwellings and its development collapsed. The situation here is not unlike that in Elmora Villa, c., Co. v. Plainfield-UnionWater Co. (Court of Errors and Appeals), 118 N.J. Eq. 317,320, 321; 178 Atl. Rep. 748, where this court refused to rescind similar contracts and the Court of Errors and Appeals approved that decision. Here, as there, moneys spent and property parted with could not be recovered.
The contracts, from the terms of which complainant seeks to be relieved, were solicited by Integrity Corporation. To provide water service at that time to its land would necessitate the installation, by the township, of water mains in the several proposed streets and the laying of a larger main in a street beyond the Integrity tract to connect them with the water supply system. It also would necessitate the laying of mains across street intersections and the installation of fire hydrants, gates and gate boxes. And, water service was but the first of an endless chain of municipal services which would be required for the new community as, for instance, sewage service, street paving, police and fire protection, and school and voting facilities. The total amount which the Integrity Corporation was called upon to pay to the township under the contracts was $14,500. It is not clear what amount was actually paid the contractor by the municipality for the laying of water mains. It was at least $16,381.04, and this figure did not include the cost of installation of fire hydrants, gates and gate boxes, nor did it include such items of incidental expense as the engineer's fee of $1,424.62 and the solicitor's fees charged in connection with the improvement. The amount may have exceeded $30,883.28, according to the testimony of Jay Remington, the then township engineer. However, Mr. Remington could not be absolutely certain of figures or happenings; he testified: "It has been almost nineteen years ago, and I am cold on this thing." *Page 403 
Integrity Corporation of New Jersey planned to build some houses upon its land and then to sell its lots to builders. The possibility of a substantial refund from the township depended, therefore, not only upon the sale of lots, but also upon the chance that lot purchasers would build houses upon their lands, and that these would be occupied and connected with the water mains — all within ten years. Possible refunds were limited to 202, the number of lots laid out on the tract, and would be further reduced when two or more lots were used for one dwelling. Obviously, Mr. Fox and his associates accepted the certainty that only a part of the money paid by Integrity Corporation to the municipality would ever be refunded, and the complainant accepted that certainty when she took her assignment. She now asks that she be given a right to demand payment of the entire fund deposited and to collect it in refunds over an indefinite period of the future.
The laches rule has been applied to the complainant's second cause of action; it must also be applied to her first. She has not established a case which would persuade this court to grant or justify it in granting her any relief against the terms of the contracts.
A decree will be advised dismissing complainant's bill, with costs.