I am advised that an appeal has been taken in this matter which originated upon a motion to strike the bill of complaint for failure to present a cause of action cognizable in equity on the ground that the complainant has an adequate remedy at law.
The bill of complaint prays an injunction restraining the prosecution of an ejectment action instituted by the defendant Middlesex-Union Airport Co., Inc., against the complainant Westfield Airport, Inc., in the New Jersey Supreme Court, Middlesex County; for the construction by the court of certain *Page 264 
clauses in the lease under which the complainant entered into the occupation of the premises; and for the assessment of damages against all of the defendants in the cause. For convenience the complainant Westfield Airport, Inc., will be referred to as "Westfield," the complainant Sussex County Airport, Inc., will be referred to as "Sussex," the defendant Middlesex-Union Airport Co., Inc., will be referred to as "Middlesex," and the individual defendants other than the defendant Salkind will be referred to as the "Lessors."
The complainant "Sussex" prior to July 1st, 1944, operated an airport in Sussex County, New Jersey. The owners and operators of "Sussex" were the defendant Salkind who owned 33 shares of its capital stock and one Harry Gordon who owned, beneficially or in his own name, the remaining 66 shares of the outstanding capital stock. At that time the individual defendants Eleanor Kent, Ivar R. Peterson and George Peterson were the owners of the Westfield Airport located in the Counties of Middlesex and Union.
The bill alleges that in order to increase the flying area for its planes, the defendant Salkind on behalf of "the complainants" negotiated a lease for the Westfield Airport. Salkind and Gordon then formed the complainant "Westfield" with a capital stock of 75 shares, 25 being issued to Salkind and 50 to Gordon. On July 1st, 1944, "Westfield" entered into a lease for the premises from the "Lessors" for a term commencing with that date and ending six months after the official termination of the war or when the existing restrictions against civilian flying shall have been lifted, whichever date shall be later. The lease also contained an option of renewal for a two-year period. A copy of the lease is annexed to the bill of complaint. Although only the complainant "Westfield" is a party to the lease, it is alleged that the "complainants" entered into possession of the premises and have since conducted an airport business at the location.
Differences arose between Gordon and Salkind as a result of which on December 31st, 1945, Gordon purchased from Salkind the entire stock interest of the latter in both "Westfield" and "Sussex" and paid therefor the sum of $13,750. The complainants say that the chief asset which gave value to *Page 265 
the stock was the lease and the opportunity to do business on the demised premises for the term of the lease.
On July 1st, 1944, when the lease for the airport was executed there was a building on the demised premises used as a hangar, repair and workshop and essential to the operation of the airport. On November 28th, 1945, the hangar was destroyed by fire, became useless and untenantable and still remains in that condition. The complainant alleges that it notified the lessors of the fire and requested that the damage be repaired forthwith but the lessors have refused to do so and the building has never been repaired. The complainant paid its rent up to November 30th, 1945, but thereafter and up to August 31st, 1946, the lessors refused to accept the rent and informed the complainants of their intention to terminate the lease, to sell the premises and to interfere with the possession by the complainants of the premises. The lessors applied the security of $300 to payment of rent for December, 1945, and January, 1946. The bill then recites the following series of incidents which it is claimed constitute interference with the complainants.
The return of the December, 1945, rent with a notice that the lease was considered to have been breached and that the premises were to be vacated by the end of January, 1946; the failure of the governing body of the Township of Woodbridge to issue in February, 1946, a permit to the complainants to construct portable hangars on the airport land which refusal, it is alleged, was a result of the lessors' objection to such permit; a letter from the lessors dated February 28th, 1946, informing the complainants that the lessors would not waive the provision in the lease requiring written consent of the lessor to make alterations, additions or improvements to the premises; a telegram by the defendant "Middlesex," sent after it had purchased the premises from the lessors, to the New Jersey Aviation Commission informing that body that "Middlesex" was the owner of the airport, that the occupancy of the complainants was not recognized, that the lease under which "Westfield" was in possession had been terminated by the destruction of the building, and that efforts were being made to evict the occupants. Notwithstanding this telegram, *Page 266 
however, the complainant received an airport license and an operator's license, but did not obtain a license for a Class I airport.
Continuing, the bill alleges that on July 25th, 1946, "Middlesex" took title to the premises subject to the provisions of the lease; that the defendant Salkind supplied the funds for the purchase and that he is the beneficial owner of the majority, if not all, of the capital stock. "Middlesex" refused to repair the building and on August 23d, demanded possession of the premises. Finally, on October 30th, 1946, "Middlesex" instituted the ejectment suit which the complainants by this bill seek to restrain. Complainants allege that all of the defendants acted in a conspiracy to destroy the value of the lease to the complainants and to interfere with and terminate the use and enjoyment of the possession of the premises.
The prayers are for specific performance of the covenant to repair; injunction against interference with the quiet possession of the premises; injunction against the further prosecution by "Middlesex" of the ejectment suit; ascertainment of the loss to the complainants and the payment of damages; determination by the court of the rent the complainants are to pay for the premises; construction of the lease defining the complainants' rights with respect to portable and temporary buildings; construction of the fire clause in the lease.
Albeit the bill of complaint is filed by complainants "Westfield" and "Sussex," only "Westfield" is a signatory party to the lease. It alone can derive any rights by virtue of the tenancy or assert any cause of action which may exist. The bill is completely devoid of any allegation which connects "Sussex" to the lease, to the Westfield Airport premises, to any alleged interference with the tenancy on the part of any of the defendants or to the ejectment suit. If, as alleged, both of the complainants entered into possession of Westfield Airport after the complainant "Westfield" signed the lease, then "Sussex" did so as a trespasser. In all respects the complainant "Sussex" is a complete stranger to these transactions. On its face, the bill shows no rights in "Sussex" respecting the premises or the lease, and so the bill will be dismissed as to that complainant. *Page 267 
In the foregoing summary of the allegations of the bill it is noted that the complainants charge the defendants with the commission of certain acts affecting the right of the complainants to continue in possession of the premises. It is on the basis of all of these acts that the complainants seek to enjoin the ejectment suit instituted by "Middlesex" and to construe the lease which is now owned by "Middlesex." The following chronology of events taken from the complaint show the status of each of the defendants at the time each act of alleged interference occurred:
July 1st, 1944, "Sussex" operated an airport in Sussex County not involved in this proceeding. July 1st, 1944, complainant "Westfield" executed a lease with the lessors for the Westfield Airport and entered into possession. November 28th, 1945, hangar on the Westfield Airport was destroyed by fire. December, 1945, the lessors notified "Westfield" that the lease would be terminated as of January 31st, 1946. December 30th, 1945, defendant Salkind sold his entire stock interest in complainants "Westfield" and "Sussex" to Gordon — the settlement of differences between the parties which began early in 1945. February 20th, 1946, complainants were refused a permit to construct hangars on the airport after the lessors had objected. February 28th, 1946, complainants were notified by the lessors that there would be no waiver of the clause in the lease requiring the consent of the lessors before alterations, additions, or improvements could be made to the premises. July 25th, 1946, the defendant "Middlesex" acquired title to the Westfield Airport. July 26th, 1946, the defendant "Middlesex" objected to the issuance of an airport permit to the complainants on the ground that the lease had now been terminated.
The only act with which the defendant "Middlesex" had any direct connection is the notice served in July, 1946, that "Middlesex" considered the lease to have been terminated. Of this, however, complainants were already aware since, as they themselves allege, the officers of "Middlesex" had refused to negotiate a new lease and had demanded immediate possession of the premises. The complainants knew from the time of the fire in November, 1945, that the lessor did *Page 268 
not intend to repair but to rebuild, relying on the fire clause in the lease to terminate the tenancy. While the complainants allege, on belief, that the acts of the lessors were done at the direction or request of the defendant "Middlesex" and the defendant Salkind, there is no charge that any of these acts were unlawful or in violation of the terms of the lease. In fact it appears from the bill of complaint that the conduct of all of the defendants was consistent with the position originally taken by the lessors, that, by reason of their intention not to repair the hangar the lease was terminated.
What the complainants seek is the construction by this court of clauses in the lease providing for termination upon a fire loss and requiring the consent of the landlord before alterations or improvements can be made to the premises. They present, however, no peculiarly equitable right which cannot be asserted in the pending ejectment action. Not one of the grounds commonly asserted for equitable intervention is here alleged. Language charging accident, mistake, fraud, waiver or estoppel is conspicuously absent. The court is not asked to prevent the operation of a forfeiture of the lease. The clause from which the termination of the lease arises is as follows:
"Seventh: That the Tenant shall, in the case of fire, give immediate notice thereof to the Landlords who shall thereupon cause the damage to be repaired forthwith; but if the premises be so damaged that the Landlords shall decide to rebuild, the term shall cease and the accrued rent be paid up to the time of the fire."
The expiration of the term of the lease by the limitation of this clause is self-operative and automatic. All that is required is an election by the landlord to rebuild the premises, that this has occurred complainants themselves allege. They also allege that the hangar was so destroyed as to be untenantable.
The distinction between a termination of a lease as a result of a forfeiture and termination by limitation is clearly pointed out by Vice-Chancellor Berry in Rankin v. Homestead Golf andCountry Club, Inc., 135 N.J. Eq. 160; 37 Atl. Rep. 2d 640.
In that case the tenants sought to enjoin a dispossess proceeding instituted by the landlord in the District *Page 269 
Court. The lease was for a term of five years but provided that it could be canceled by the lessor on three months' notice in the event of a bona fide sale of the premises. The lessor gave such notice and demanded the surrender of the premises. The complainant, charging fraud on the part of the defendant in reporting that a bona fide sale had been effected, filed a bill to restrain the prosecution of the dispossess action. The defendant moved to strike the bill and to vacate the restraint issued pendente lite. In view of the fact that the allegation of fraud was admitted by force of the motion, the court denied the motion to strike and considered the merits of the bill on the motion to vacate the restraint. After discarding the charge of fraud as not being sustained Vice-Chancellor Berry pointed out that the only defense which the tenant asserted revolved around a construction of the clause in the lease referred to above. On this point he said: "That question, however, is a legal one dependent upon the construction of the lease (Smalley v.Hendrickson, 29 N.J. Law 371), and one which the District Court is entirely competent to answer. The complainant, as defendant in the law action, may interpose that contention as a defense with the same force and effect as here and thus his remedy at law is complete."
The court then noted the distinction between the expiration of a lease by limitation and by forfeiture and said: "A careful examination of all the New Jersey cases on this subject will disclose that only where equitable rights or equitable defenses, such as waiver, forfeiture, estoppel, or the like, are involved, and where there is no adequate remedy at law, will this court exercise its jurisdiction to restrain the prosecution of such proceedings. Here there are no elements of forfeiture, waiver or estoppel involved, but only an agreement creating a limitation of the term of the lease. Whether or not that limitation has become effective is, as already suggested, a legal question dependent upon the construction of the lease, a question which may quite properly be raised and answered in the District Court proceeding which the complainant here seeks to enjoin. Adequacy of legal remedy applies equally to plaintiffs and defendants, and if a defendant in a suit at law has a defense cognizable before the law court, equity will not grant *Page 270 
relief unless the relief in Chancery is more complete than at law."
The decision of this court in Goldberg's Corp. v. TheGoldberg Realty, c., Co., 134 N.J. Eq. 415; 36 Atl. Rep. 2d122, points again to the necessity of some equitable right before the Court of Chancery will interfere with and enjoin the prosecution of a suit for the possession of premises. In that case the complainant had a lease on a department store in Trenton. The lease gave the tenant an option to renew for the further term provided that an election was made before August 1st, 1942. The tenant failed to give the required notice, but negotiated with the landlord for a new lease effective upon the expiration of the existing tenancy. The landlord finally notified the complainant that the premises had been let to another tenant, the defendant, Swern Co., and that the complainant would be required to surrender possession at the expiration of the original term.
The complainant thereupon sought the aid of this court to compel the landlord to permit it to exercise the option, to restrain any suit for possession of the premises, and for a declaration that the new tenant held its tenancy in trust for the complainant. To support its last prayer the complainant alleged that one of the partners of Swern Co. was a "close friend" of the president of the complainant corporation and was familiar with the negotiations between the complainant and the landlord.
A motion was made to strike the bill on the ground that it failed to charge a cause of action in equity. In granting the motion Vice-Chancellor Jayne pointed out that what the complainant sought was either a new contract between the parties or a decree by the court compelling the parties to contract with each other.
The extent to which the complainants seek to have the court make a new contract for the parties is indicated by the prayer in the bill of complaint that the court determine the amount of rent which should be paid by "Westfield" if the tenancy is to continue. The complainants do not allege, however, that the lease is ambiguous or equivocal in any respect. Nowhere in the bill of complaint do they point to any *Page 271 
language in the lease which requires the interpretation of this court. That the lease may represent an unwise deal on the part of the tenant presents no peculiar equity to this court. GardenRealty Corp. v. Hadley, 110 N.J. Eq. 474; 160 Atl. Rep. 385;Hall v. Finn, 116 N.J. Eq. 34; 172 Atl. Rep. 531; affirmed,119 N.J. Eq. 165; 181 Atl. Rep. 41; Fox v. Haddon Township,137 N.J. Eq. 394; 45 Atl. Rep. 2d 193. In the case last cited Vice-Chancellor Woodruff made the following comment which is peculiarly pertinent to the facts of this case: "It is true, as the complainant argues, that forfeitures and unjust enrichment are regarded with disfavor in equity; but, it is equally true that the law permits men to make contracts which will result in forfeitures or a waiver of the return of money or property and, when no special equity calling for relief is established and it is clear from the terms of the contract that the parties have so agreed, a court of quity will not interfere to substitute a different and more liberal agreement. It is not to be supposed that a court of equity will lightly invalidate unambiguous contracts made between competent parties and substitute therefor other agreements in accord with variable rules of right and conscience."
The fact that the complainants will lose the possession of the premises and may thereby suffer irreparable damage is disposed of by the comment of Mr. Justice Swayze in McGann v. La BrecqueCo., 91 N.J. Eq. 307; 109 Atl. Rep. 501, quoted by Vice-Chancellor Berry in his decision in Rankin v. HomesteadGolf and Country Club, Inc., supra: "The amount involved is of no consequence since it is the glory of the law to treat cases where the amount is small with the same careful consideration as cases involving millions. The poor man who may be ejected from his apartments may suffer damage as serious to him as the loss suffered by the present plaintiff in losing the good will which he has built up under a lease terminable on six months' notice. The injury to both may be determined by a jury if the ejection is unlawful * * *. The jury may err by either too large or too small a verdict, but we must not assume in advance that it will err. We must assume that it will do right."
For these reasons the bill of complaint will be dismissed. *Page 272